FRANK H. CHRISTENSEN v. CHERYL D. CHRISTENSEN

No. 8915DC1274

(Filed 18 December 1990)

1. **Divorce and Alimony § 30 (NCI3d) — equitable distribution — valuation of marital property — post-separation occurrences incompetent**

The equitable distribution statute, N.C.G.S. § 50-21(b), renders evidence of post-separation occurrences incompetent

for the purpose of valuing marital property. Consequently, a trial court had a duty to exclude such incompetent evidence from its consideration, and its failure to do so is reviewable by the appellate court even in the absence of an objection to the evidence at trial.

Am Jur 2d, Divorce and Separation § 938.

Proper date for valuation of property being distributed pursuant to divorce. 34 ALR4th 63.

2. **Divorce and Alimony § 30 (NCI3d)— equitable distribution— valuation of marital asset— post-separation residency change— erroneous reliance**

The trial court erred in adopting an expert's valuation of a management company as a marital asset where the expert relied on defendant's out-of-state residency in arriving at the valuation, but defendant was a resident of North Carolina at the time of the separation of the parties.

Am Jur 2d, Divorce and Separation § 938.

Proper date for valuation of property being distributed pursuant to divorce. 34 ALR4th 63.

3. **Divorce and Alimony § 30 (NCI3d)— equitable distribution— stipulation of equal division— marital home— post-separation appreciation and credits— findings unnecessary**

Where the parties stipulated that an equal division of the marital property was equitable, the trial court properly refused to make separate findings of fact regarding the post-separation appreciation of the marital home, its post-separation occupancy by the plaintiff, and tax savings allegedly realized by the plaintiff from making post-separation mortgage payments.

Am Jur 2d, Divorce and Separation § 903.

4. **Divorce and Alimony § 30 (NCI3d)— equitable distribution— marital assets— giving parties options to purchase**

Where the trial court classified as marital property and valued an athletic club and a management contract, the court did not err in providing a method of distribution which gave defendant the first option to purchase the assets under a set formula, gave plaintiff the second option, and provided that the assets should be sold and the proceeds divided between

the parties in accordance with the set formula if neither party exercised its option to purchase within a specified time.

**Am Jur 2d, Divorce and Separation §§ 900, 933.**

APPEAL by defendant from judgment entered 7 April 1989 and order entered 21 June 1989 by *Judge Patricia Hunt* in ORANGE County District Court. Heard in the Court of Appeals 21 September 1990.

*Tharrington, Smith & Hargrove, by Carlyn G. Poole, and Boxley, Bolton & Garber, by J. Mac Boxley, for plaintiff-appellee.*

*Moore & Van Allen, by Edward L. Embree, III, and Porter, Steel, Humphries and Porter, by W. Travis Porter, for defendant-appellant.*

GREENE, Judge.

The defendant appeals from an equitable distribution judgment entered on 7 April 1989.

The parties to this case were married on 23 July 1979, separated on 19 July 1985, and were divorced on 29 December 1986 on the ground of one year's separation. At the time of the parties' separation, the plaintiff was a licensed medical doctor, Board certified in ophthalmology and plastic surgery. In December of 1982, he began his private medical practice in Chapel Hill, North Carolina.

At about the time the plaintiff began his medical practice, the parties began pursuing their interest in establishing a racquetball, swim, and fitness center in the Durham-Chapel Hill area. The center was ultimately established, named Metrosport, and built on land leased from Duke University in Durham, North Carolina. Towards that goal the parties established CDC Associates, a limited partnership. The general partner in CDC Associates was CDC Management Corporation (CDC Management). CDC Associates financed Metrosport and as a part of the financial arrangement, the parties and the defendant's parents personally guaranteed payment on a $1,000,000 loan obtained by CDC Associates. Pursuant to a contract entered into between CDC Associates and CDC Management, CDC Management was to provide management services for Metrosport in exchange for a management fee of $36,000 a year.

After receiving evidence from the parties' expert witnesses, including Dr. Finley Lee, Ray Jennings, and Curtis Beusman, the trial court made the following finding of fact regarding the value of CDC Management:

12. The parties have acquired the following marital property during the course of their marriage:

. . . .

(g) The parties' marital interest in CDC Management Corporation and CDC Associates, operating as the MetroSport athletic club, a racquetball, swim and fitness center located close to Duke Medical Center in Durham, North Carolina.

. . . .

Further, the Court finds that the net fair market value, as of the date of separation, of the marital asset CDC Management Corporation, the general partner in CDC Associates, is $218,848.00. This asset consists of the management contract with CDC Associates for $36,000.00 a year for forty (40) years, and which capitalized at a rate of .1645 for the life of the forty year lease with Duke University, is $218,845.00. The Court finds that the capitalization rate of .1645 used by Dr. Lee for this purpose is a fair and appropriate rate (similar to the rate used by Ms. Shaffer in her valuation of the medical practice). Dr. Lee found that this rate was approximately five percent (5%) over the required rate of return for a long term corporate bond after considering premiums for illiquidity, administrative costs, bankruptcy and other risks.

The only evidence presented at trial which supports this finding of fact comes from the testimony and valuation summary of Dr. Lee, the plaintiff's expert. Dr. Lee valued CDC Management using a process called capitalization which in this case, according to the defendant, apparently involved assuming the receipt of the $36,000 per year management fee "for a six year period beginning on the date of separation and extending to July 1991, or the number of years a purchaser would be willing to pay in advance in order to acquire the entity [CDC Management]."

In describing his valuation of CDC Associates, Dr. Lee mentioned several times that the defendant lived in Pittsburgh. The evidence shows that the defendant lived in Roxboro, North Carolina at the date of separation, not in Pittsburgh, Pennsylvania. The

following questions and answers indicate that Dr. Lee also considered the defendant's post-separation residency in his classification of the $36,000 a year management fee due under the management contract between CDC Associates and CDC Management:

> Q. Mrs. Cristiansen [sic], as general partner of CDC Associates, was paid an annual management salary of $36,000.00 a year which she received monthly?
>
> A. Well, I would not call it salary. I'd call it a fee. I would assume salary as cost of the service and I don't know that you can provide services from 500 miles away.
>
> . . . .
>
> Q. You have called management fee of $36,000.00 a year received by CDC Management as an unearned stream of cash flow rather than as a wage?
>
> A. No, I have said that I believe, looks to me like it is a dividend, like dividends. The reason it looks like dividends is because the lady lives in Pittsburgh.
>
> Q. Okay, but you considered it as an unearned stream of cash flow, didn't you?
>
> A. No, not exactly, left it right there in the income statement.. [sic]
>
> Q. But in capitalizing it, haven't you considered it in the stream of unearned income?
>
> A. As far as the management corporation, yes, in the sense that it is a value to that particular business and it is not clear what services are associated. Now, to the extent that there are true—let me back up, Mrs. Christensen is a general partner; she's also a limited partner, she in my mind makes atrip [sic] down once a year to attend a partnership meeting, I consider that incidental. I would have to consider what services, exactly what services she provides from Pittsburg [sic] before I could ever take part of it out—
>
> Q. You simply have no knowledge what she's doing from Pittsburgh to assess to management, CDC Management?
>
> A. I think you have to say that. I really can't get into her mind and activities. All I can do it [sic] look and see that

there is an absentee manager, absentee management, and my experience with absentee management, it's that nothing much goes on and when it does go on, it's not very good.

Q. If your assumption were incorrect—how would it affect your evaluation?

A. Well, it would affect my evaluation in that I was incorrect in my assumption. . . . if it were shown to me how a person can manage a company in Durham, North Carolina from Pittsburgh before I would change my assumptions.

When describing how he valued CDC Management, Dr. Lee testified that he attempted to value CDC Management in basically the same manner as he valued CDC Associates. He also stated that he valued CDC Management "[a]s of the month of separation, July, 1985." However, when discussing the manner in which he arrived at the .1645 capitalization rate, Dr. Lee stated:

I adjusted my rate to reflect several things—illiquated that particular investment, administrative costs, say 5% additional for that, although I don't know whether that's enough, living in Pittsburghas [sic] opposed to Duke, a disadvantage—I don't think probably that type of administrative factor should be there but I put it there anyway.

The trial court found as fact that the parties held marital interests in CDC Associates, CDC Management, and the management contract, that the defendant had been employed as the general partner of Metrosport since 1982, and also that between the date of the parties' separation and the summer of 1988 the defendant received to the exclusion of the plaintiff $90,000 pursuant to the management contract with CDC Associates. The trial court then concluded that the plaintiff was entitled to a one-half credit of the marital asset in the amount of $45,000. The trial court also ordered the following regarding the parties' interests in CDC Associates and CDC Management:

Each party has the right to purchase the others [sic] interest in the marital property as set out in Paragraph 22(c), which paragraph is adopted and incorporated herein by reference.

CHRISTENSEN v. CHRISTENSEN

[101 N.C. App. 47 (1990)]

Paragraph 22(c) reads as follows:

Defendant is given the first opportunity to purchase the Metrosport athletic club including the parties' interest in CDC Associates and the management contract, formerly known as CDC Management Corporation by paying Plaintiff the sum of $129,148.42 and also simultaneously refinancing the existing $1,000,000.00 loan on the club, or taking such other action as is satisfactory to this Court in regard to the Metrosport athletic club, so that Plaintiff is completely relieved of any and all liability that may exist in regard to the $1,000,000.00 Note which he guaranteed.

Plaintiff is next given the option to purchase Defendant's interest in the parties' marital asset known as the Metrosport athletic club including the parties' interest in CDC Associates and the management contract, formerly known as CDC Management Corporation, for the sum of $42,160.58 and simultaneously refinancing the existing loan or taking such other action as is satisfactory to this Court, so as to remove Defendant from any and all liability that may exist in regard to the $1,000,000.00 note in regard to the Metrosport club.

In the event the parties are unable to purchase each others [sic] interest in the Metrosport athletic club and refinance the loan as provided above by May 1, 1989, the Court finds that this marital asset should be sold at the earliest possible date, including the parties' marital interest in CDC Associates and the management contract, formerly known as CDC Management Corporation, and all interest the parties have in the Metrosport athletic club. Either party may present information regarding prospective buyers to the Court for its consideration and approval. Out of the net proceeds of the sale, the Plaintiff shall be paid $129,148.42, and the Defendant will be paid $42,160.58. In the event there are additional proceeds from the sale of their interest, they are to divide any such amount equally. In the event the proceeds of sale are not adequate to pay these parties' sums herein ordered, then each party is to receive their pro-rata percentage share according to the ratio of 129 Plaintiff and 42 Defendant of the net proceeds of sale. Pending sale of the club and the management contract, the parties will receive, effective from the date of the Equitable Distribution Trial, the following percentage of the $36,000.00

annual management fee: Plaintiff fifty percent (50%) and Defendant (50%) per year.

One of the marital assets acquired by the parties was the marital home located in Chapel Hill. After the parties' separation in 1985, the plaintiff remained in the home, continued making the monthly mortgage payments, and preserved the marital asset.

This matter was heard over a period of approximately nine days, beginning on 8 August 1988 and ending on 10 October 1988. On 28 March 1989, the trial court signed its judgment of equitable distribution in which it classified, valued, and distributed the parties' marital assets. The judgment was entered on 7 April 1989 when the Clerk of Court mailed notice of the judgment's filing to the parties pursuant to N.C.G.S. § 1A-1, Rule 58. On 17 April 1989, the defendant filed motions for additional findings of fact, a new trial, and relief from the judgment. Upon trial court denial of these motions, the defendant filed timely notice of appeal.

---

The issues are (I) whether the trial court erred when it adopted Dr. Lee's valuation of marital assets; (II) whether the trial court erred in its consideration of costs and credits associated with the parties' marital home; and (III) whether the trial court erred when it provided a method for distributing marital assets which was to occur in the future but within a defined time frame after the signing of the judgment.

I

The defendant argues the trial court erred when it adopted the plaintiff's expert's valuation of CDC Management because the valuation evidence was based upon post-separation occurrences. In response, the plaintiff argues that the defendant should not be allowed to make this argument on appeal because the defendant did not object at trial to the admission of the expert's testimony and valuation summary.

Generally, the "[f]ailure to object to the introduction of evidence is a waiver of the right to do so, 'and its admission, even if incompetent, is not a proper basis for appeal.'" *State v. Lucas*, 302 N.C. 342, 349, 275 S.E.2d 433, 438 (1981) (citations omitted). However, "where evidence is rendered incompetent by statute, it is the duty of the trial judge to exclude it, and his failure to do so is reversible error, whether objection is interposed and exception noted or not."

*State v. McCall*, 289 N.C. 570, 577, 223 S.E.2d 334, 338 (1976). "As applied to evidence generally, . . . [incompetent] is sometimes used in the broad sense of *inadmissible*, but more often and more accurately to indicate evidence inadmissible for some reason other than irrelevance." 1 Brandis, Brandis on North Carolina Evidence § 3 (3d ed. 1988). *See also* 29 Am. Jur. 2d *Evidence* § 257 (1967) ("competency of evidence depends on whether it is of the sort or type which may be accepted on any issue to which it is relevant").

[1] Our equitable distribution statute provides that "marital property shall be valued as of the date of the separation of the parties," N.C.G.S. § 50-21(b) (1987), and it requires the trial judge to "determine the net market value of the marital property as of" that date. *Willis v. Willis*, 86 N.C. App. 546, 550, 358 S.E.2d 571, 573 (1987). The statute thereby requires the trial court to consider only evidence of the value of the marital property as of the date of separation, thus rendering evidence of post-separation occurrences incompetent for the purpose of valuing marital property. Consequently, a trial court is under a duty to exclude such incompetent evidence from its consideration, and its failure to do so is reviewable by this Court in the absence of an objection to the evidence at trial. *McCall*, 289 N.C. at 577, 223 S.E.2d at 338.

If the record on appeal contains competent evidence which supports the trial court's findings of fact, the trial court is rebuttably presumed to have relied upon it and disregarded any incompetent evidence. *Best v. Best*, 81 N.C. App. 337, 342, 344 S.E.2d 363, 366 (1986). *See also Chappell v. Winslow*, 258 N.C. 617, 624, 129 S.E.2d 101, 106 (1963) (trial court rebuttably presumed to have acted "only on the basis of competent evidence"). Given this presumption, the party claiming the trial court relied on incompetent evidence has the burden of proving the same on appeal. *Best*, 81 N.C. App. at 341-42, 344 S.E.2d at 366.

[2] In this case, the record points unerringly to the fact that Dr. Lee considered the defendant's out-of-state residency, a fact not in existence at the time of separation, in arriving at the value of CDC Management, a marital asset. A valuation based upon circumstances not in existence at the date of separation is incompetent evidence for establishing the value for CDC Management. The trial court relied upon this incompetent evidence as demonstrated by finding of fact number 12(g). Therefore we vacate this finding of fact and all conclusions of law and portions of the order based

upon it and remand this case to the trial court for a finding based on competent evidence in the record, for conclusions of law based upon the new finding, and for a new order. If there is no competent evidence in the record to support a finding of the valuation of CDC Management, the trial court under these circumstances is required to accept additional evidence for this limited purpose.

## II

The defendant generally argues that the trial court erred in its consideration of costs and credits associated with the parties' marital home. Specifically, the defendant argues that the trial court erred by (1) failing to make separate findings of fact pertaining to the appreciation in value of the marital home from the date of separation to the date of the hearing, (2) failing to account for post-separation occupancy of the marital home by the plaintiff and the resultant use value, and (3) failing to make a specific finding of fact as to the tax savings the plaintiff realized with regard to the interest payments made within the post-separation mortgage payments.

Generally, when evidence of a N.C.G.S. § 50-20(c) distributional factor is introduced, the trial judge is required to consider the factor and make a finding of fact with regard to it. *Armstrong v. Armstrong*, 322 N.C. 396, 405-06, 368 S.E.2d 595, 600 (1988).

> However, where the parties . . . stipulate that an equal division of the marital property is equitable, it is not only unnecessary but improper for the trial court to consider, in making that distribution, any of the distributional factors set forth in § 50-20(c). . . .

*Miller v. Miller*, 97 N.C. App. 77, 81, 387 S.E.2d 181, 184 (1990).

[3] The parties stipulated to an equal division of the marital property which is equivalent in this case to a stipulation that an equal division of the marital property is equitable. Accordingly, the trial court properly refused to make separate findings of fact regarding the post-separation appreciation of the marital home, its post-separation occupancy by the plaintiff, and the tax savings allegedly realized by the plaintiff because of the post-separation occupancy of the house. *Id.*

CHRISTENSEN v. CHRISTENSEN

[101 N.C. App. 47 (1990)]

### III

[4] The defendant argues that the trial court erred by failing to order a final distribution of the parties' interest in CDC Management and CDC Associates. According to the defendant, the district court, by leaving the distribution of this marital property open and uncertain for an indefinite period of time in hopes that the parties themselves could provide an equitable settlement, engaged in conduct which is the antithesis of an equitable distribution. We disagree.

In *Carr v. Carr*, 92 N.C. App. 378, 374 S.E.2d 426 (1988), this Court was faced with an incomplete and erroneous equitable distribution judgment. Among its many failings included the following:

> (1) Instead of identifying, classifying, valuing and distributing the various bank accounts and articles of household property that the parties were found to have acquired during the marriage, the judgment left everything relating to these properties open for an indefinite period in the hope that the parties, who have agreed about very little in recent years, will evaluate and divide them. This is the antithesis of a distribution and it rendered interlocutory what purports to be and should be a final judgment. It also prevents us from knowing what properties the parties will receive, much less their value, and made meaningless the statement that the distribution is equitable.

> . . . .

> (4) Instead of dividing and distributing the three tracts of marital real estate in some practical and equitable manner (a simple thing to do since each tract has approximately the same fair market value and a balance can be readily achieved by reducing the major recipient's personal property or requiring an appropriate payment), the judgment merely declared that the parties own each tract as tenants in common and directed that if they do not divide the tracts within an unstated time, they be sold by commissioners under the Judicial Sales Act. This is not a distribution, but a dilatory and potentially wasteful substitute that neither reason nor the record justifies.

*Id.* at 379-80, 374 S.E.2d at 427-28.

The trial court in *Carr*, rather than classifying, valuing, and distributing the marital property as required by the statute, directed

the parties themselves to follow the three-step process and to do so within an unlimited period of time. Here, the trial court classified and valued both CDC Associates and CDC Management. The parties were not required to agree as to the manner of distribution; rather, the trial court provided a method of distribution which gave the defendant the first option to purchase these assets under a set formula. Additionally, the trial court did not leave unbridled the time within which distribution was to occur. The trial court allowed barely a month for the parties to decide who, if either of them, would purchase these assets. If the time period ultimately lapsed without either of the parties exercising its option to purchase the assets, the trial court ordered that the assets immediately be sold with the proceeds distributed to the parties according to the same formula to have been used had a party exercised its option to purchase. Accordingly, the judgment did classify and value the marital assets and the method of distribution was not inconsistent with N.C.G.S. § 50-20.

The other assignments of error and arguments made by the defendant have either been reviewed and determined to be without merit or have been abandoned. Several of the arguments in the defendant's brief are not supported by assignments of error in the record and they are deemed abandoned. N.C.R. App. P. 10(a). Other assignments of error are deemed abandoned because they do not "state plainly and concisely and without argumentation the basis upon which error is assigned." N.C.R. App. P. 10(c); *Kimmel v. Brett*, 92 N.C. App. 331, 374 S.E.2d 435 (1988). Other issues raised in the brief are not supported by argument or authority and are deemed abandoned. N.C.R. App. P. 28(b)(5); *see also Joyner v. Adams*, 97 N.C. App. 65, 387 S.E.2d 235 (1990). In several instances the defendant set forth valid assignments of error but did not argue them in the brief and they are deemed abandoned. N.C.R. App. P. 28(b)(5).

Accordingly, the judgment of the trial court is

Affirmed in part, vacated in part and remanded.

Judges ORR and DUNCAN concur.

Judge DUNCAN concurred in this opinion prior to 30 November 1990.