STEPHANIE F. OFFERMAN (MEYERS), PLAINTIFF-APPELLEE v. MARK A. OFFERMAN, DEFENDANT-APPELLANT

No. COA99-473

(Filed 4 April 2000)

1. Divorce— equitable distribution—marital interest in business—valuation

The trial court erred in an equitable distribution action in its valuation of the parties' business. The business, Mark Made, had a relationship with a corporation (Design Compendium) which creates window display designs for New York retail stores; funding for Mark Made was obtained either from an equity line or from plaintiff-wife's parents; Design Compendium subcontracted to Mark Made replicas of a particular sculpture for a Christmas display in all of Gucci's stores in the United States and Japan; when defendant contacted the bank for funds from the credit line he found that it had been frozen by plaintiff on 9 August 1996; defendant obtained an advance from Design Compendium and

Gucci but the business relationship was destroyed; the parties separated on 16 September; and it could not be determined from the findings whether the value reached by the court reasonably approximated the value of the company on the date of separation. There was neither an indication of the valuation method relied upon by the trial court nor an indication as to what portion of the assigned value represented good will, and it appears that the trial court relied heavily upon events which occurred after the date of separation, which are to be considered only as distributional factors because the case arose prior to the 1997 amendments to the Equitable Distribution Act.

**2. Divorce— equitable distribution—unequal distribution—distributional order**

A distributional order in an equitable distribution action was vacated where the action was remanded on other grounds. The trial court was directed to make a specific finding of the value of the parties' business as of the date of distribution so that it could be certain that its distributional intent is carried out.

Appeal by defendant from a judgment entered 12 October 1998 by Judge John W. Smith in New Hanover County District Court. Heard in the Court of Appeals 12 January 2000.

Stephanie F. Offerman (plaintiff) and Mark A. Offerman (defendant) were married on 30 May 1987, and separated on 16 September 1996. During the course of their marriage they acquired various assets subject to equitable distribution, including a closely held corporation which they formed on 10 October 1991. Originally known as New Elements, Inc., the corporate name was changed to Mark Made, Inc. (Mark Made) in 1993. Mark Made's operations included the manufacture of candlestick holders, candlesticks and eventually expanded to include the manufacture of store window displays. Mark Made was a Sub-chapter S corporation with 100 outstanding shares of stock issued in the names of plaintiff and defendant as joint tenants with right of survivorship.

Mark Made developed a relationship with Design Compendium, a corporation which creates window display designs for major New York retail stores. Beginning in 1993, Mark Made provided custom manufactured goods to Design Compendium for use in the creation of window displays. It was customary for Mark Made to bear all "start-up" and production expenses associated with a project and to receive

payment from Design Compendium upon completion of the job and delivery of the product. The evidence indicates that prior to the date of separation, funding for Mark Made was obtained either from an equity line or from the parents of plaintiff-wife.

In August 1996, Design Compendium and Gucci entered into a contract for the manufacture of a Christmas window display which included a replica of a particular sculpture. Design Compendium subcontracted with Mark Made to produce the replicas at a total contract price of $254,000.00. The replicas were to be shipped to all of Gucci's stores in the United States and Japan. In order to begin work on the project, defendant contacted his bank to obtain funds from the credit line he and plaintiff had established using their marital home as security, but discovered that the credit line had been "frozen" by plaintiff on 9 August 1996. At trial, plaintiff testified that she froze the credit line with full knowledge of the contract between Mark Made and Design Compendium and of the expenses Mark Made would have to advance in order to complete the project. Having no funds with which to begin the project, Mark Made sought an advance of $90,000.00 from Design Compendium. Design Compendium advanced Mark Made $60,000.00 from its own credit line and obtained the remaining $30,000.00 from a very reluctant Gucci. According to the testimony of Godfrey Raynor, co-owner of Design Compendium, Mark Made's request for an advance significantly altered their business relationship. Mr. Raynor stated that he "wanted to end the relationship. I didn't see Mark Made as a vendor to continue with. . . . I didn't like what had happened to me and I would never let that happen to me again." When asked whether he discussed Mark Made's ability to finance future jobs with the defendant, Mr. Raynor testified that he "didn't want to work with him [defendant] in that capacity again." The plaintiff and defendant separated shortly thereafter, and this action was instituted.

At the equitable distribution trial the parties' assets, including Mark Made, were identified, valued, and distributed. The trial court found that Mark Made had a net fair market value of $365,000.00 on the date of separation. The trial court arrived at that value by including in its calculations the anticipated profit from the Design Compendium-Gucci contract, even though the contract was only about 10% performed on the date of separation. The trial court found that on the date of distribution, the market value of Mark Made was sharply reduced, and did not exceed the fixed assets of the corporation. The trial court valued the net marital estate at $831,670.54 and

distributed 56% of the marital estate, including Mark Made, to the defendant and 44% of the marital estate to plaintiff. Defendant appealed, assigning errors.

> *Johnson & Lambeth, by Carter T. Lambeth, for plaintiff appellee.*

> *Lea, Clyburn & Rhine, by J. Albert Clyburn and James W. Lea, III, for defendant appellant.*

HORTON, Judge.

Defendant brings forward four assignments of error, the first three focusing on the trial court's valuation of Mark Made, and the fourth assignment of error challenging the trial court's distribution of the marital estate. Because the first three assignments of error are interrelated, we will discuss them together.

### I. Valuation of Mark Made

[1] This action for equitable distribution was filed on 16 April 1997, prior to the effective date of the 1997 amendments to the Equitable Distribution Act which created the category of divisible property. For actions filed before 1 October 1997, the trial court is to identify and classify the property of the parties, determine the net value of the property as of the date of the separation of the parties, and distribute the marital property in an equitable manner. *Smith v. Smith*, 111 N.C. App. 460, 470, 433 S.E.2d 196, 202-03, *disc. review denied*, 335 N.C. 177, 438 S.E.2d 202 (1993), *rev'd in part*, 336 N.C. 575, 444 S.E.2d 420 (1994). The appreciation or depreciation in value of marital assets is to be treated as a distributional factor under N.C. Gen. Stat. § 50-20(c)(11a) or (12). *Truesdale v. Truesdale*, 89 N.C. App. 445, 448, 366 S.E.2d 512, 514 (1988).

In this case, defendant does not assign error to the identification and classification of assets, but argues that the trial court erred in its valuation of Mark Made and in its subsequent distribution. We agree with defendant, and remand the case for a new hearing on the value of Mark Made and for entry of a new distribution order.

In valuing a marital interest in a business, the task of the trial court is to arrive at a date of separation value which "reasonably approximates" the net value of the business interest. *Poore v. Poore*, 75 N.C. App. 414, 422, 331 S.E.2d 266, 272, *disc. review denied*, 314 N.C. 543, 335 S.E.2d 316 (1985). In *Poore*, this Court stated that

OFFERMAN v. OFFERMAN

[137 N.C. App. 289 (2000)]

a court should make specific findings regarding the value of a spouse's professional practice and the existence and value of its goodwill, and should clearly indicate the evidence on which its valuations are based, preferably noting the valuation method or methods on which it relied. On appeal, if it appears that the trial court reasonably approximated the net value of the practice and its goodwill, if any, based on competent evidence and on a sound valuation method or methods, the valuation will not be disturbed.

*Poore*, 75 N.C. App. at 422, 331 S.E.2d at 272. "[T]he requirements and standard of review set forth [in *Poore*] apply to valuation of other business entities as well," and we have extended the *Poore* standards to the valuation of a marital interest in a closely held corporation. *Smith*, 111 N.C. App. at 487, 433 S.E.2d at 212; *Patton v. Patton*, 318 N.C. 404, 348 S.E.2d 593 (1986).

Here, each of the parties offered the testimony of an expert in valuation. An expert appraiser testified for the defendant that he valued Mark Made by using three different methods: capitalized earnings, capitalized excess earnings, and a revenue multiple. The appraiser then averaged the values he obtained from those three methods and obtained a figure of $37,391.00, which he testified was, in his opinion, the net fair market value of Mark Made on the date of separation. An expert appraiser testified for plaintiff-wife that he used the capitalization of excess earnings method to arrive at a fair market value of $378,800.00 for Mark Made on the date of separation. The trial court rejected the opinions of both experts, making the following finding:

4.8.6  Two experts testified about the value of the corporation on the date of separation. The court is persuaded that the corporation had substantial value, and finds that the testimony of both experts contains biases which make their valuations extreme. Husband's expert, whether consciously or unconsciously, places too much weight on those events which occurred after separation in making a judgment as to how to treat the increase in income from the Gucci contract, and therefore has proposed an absurdly low value. Wife's expert treats the Gucci contract as a reliable indicator of its income stream but fails to give adequate weight to one important critical factor: the lack of sufficient corporate assets with which secure a reliable line of credit to meet on-going operating expenses to fulfill these types of contracts. While the court believes Wife's expert provides a more realistic valuation, both valuations are therefore problematical.

Having rejected the valuations of both experts, the trial court then attempted to arrive at a net fair market value for Mark Made, and diligently set out its approach in the following specific findings of fact:

> 4.8.7 The court further finds that with respect to the Gucci account, a contract had been fully formed, and the contract obligated Mark Made to obtain all of the materials before the date of separation, and this was an obligation of the corporation. The court further finds that Gucci was obligated before the date of separation to pay the contract price, and this was an enforceable contract right and an asset of the corporation. Any accounting method which ignores these realities on the date of separation does so to the prejudice of the martial [sic] estate and is not a fair or accurate analysis of the corporate assets. The corporation did not employ an accounting method which would justify ignoring the account receivable or treating the obligation to produce the product as non-existent. These were both fully vested marital contract rights and obligations on the date of separation.

> \* \* \* \*

> 4.8.9 This court lacks the kind of expertise to revise discount rates chosen by the expert witnesses and to choose appropriate comparables and recalculate a value using the approaches which both experts believe to be an appropriate method of valuation. However, the court is not required to accept the opinions of experts. And where the experts have provided an approach to valuation which appears to be appropriate, the court may use the opinions as the starting points to arrive at a fair market value on the date of separation. Using the information provided by the experts, this court can arrive at a value which the evidence shows that a willing seller, under no compulsion, would have accepted, and what a willing buyer, under no compulsion would have paid, on the date of separation. Therefore, no further reference is required and the evidence supports a valuation by the court as follows.

> 4.8.10 This company is relatively unique, and had a potential with a certainty that goes beyond speculation of becoming a substantial economic success. Therefore, taking into consideration the shortcomings of the approaches of both experts, the court has made an independent assessment of the value of the corporation based upon those facts and circumstances which the court

believes a reasonable buyer and seller would have considered on the date of separation, without considering the unusual and unpredictable events which occurred thereafter which impaired the value.

\* \* \* \*

4.8.12 The court notes that this approach to valuation of the corporation (i.e., to include the Gucci contract as marital property and part of the corporate value) is the only one not prejudicial to either party based upon the evidence. If the court were to treat the funds received after separation as non-marital, then a dollar for dollar accounting would be required for all post-separation corporate transactions, including labor, debts, purchases, payments, receipts and taxes, on the Gucci account. The value of labor, the value of use of the marital assets and equipment in production, and an accounting for the use by Husband of the funds payable to the marital corporation but received and spent by him for living expenses after separation would be required. The court would then be required to consider all of these circumstances as distributional factors. Neither party has adduced evidence sufficient for such an accounting, and the court doubts whether such an accounting is possible. Therefore, this is the only fair way to value the Gucci contract as an asset based upon the evidence presented.

\* \* \* \*

4.8.14 Since separation, Husband has been in possession of the corporation and its assets, and has received all of the income from the corporation except for $15,000 received on the Gucci contract, which was paid over to Wife by court order of another judge.

4.8.15 On the date of separation, the court finds and concludes that the marital corporation, Mark Made, Inc., would have had a fair market value of approximately $365,000.00. This value includes the full value of the Gucci contract on the date of separation, including the profits subsequently received and taking into account the taxes Husband subsequently paid. On the date of trial, the value was substantially reduced, and probably did not exceed the value of its equipment and fixed assets plus the discounted value of the post-separation profits of the corporation which had been spent by Husband for his own personal use without the consent of wife, who was an equal shareholder.

We cannot determine from these findings whether $365,000.00 "reasonably approximates" the value of Mark Made on the date of separation. Other than the trial court's finding that its valuation was arrived at by considering the "full value of the Gucci contract," there is neither an indication of the valuation method relied upon by the trial court nor an indication as to what portion of the assigned value represents the value of Mark Made's goodwill.

Furthermore, in valuing Mark Made, it appears that the trial court relied heavily on the events which occurred *after* the date of separation. Since this case arose prior to the 1997 amendments to the Equitable Distribution Act, events which occurred following the date of separation were to be considered only as distributional factors under N.C. Gen. Stat. § 50-20(c)(11)(a) or § 50-20(c)(12). *See Christensen v. Christensen*, 101 N.C. App. 47, 398 S.E.2d 634 (1990). Thus, the trial court erred in considering post-separation events in determining the value of Mark Made.

Moreover, while we agree that the trial court has the authority to reject the findings of the experts enlisted by the parties it is yet required to state specifically how the court arrived at its valuation. *See Smith*, 111 N.C. App. at 488-94, 433 S.E.2d at 213-16 (1993) (trial court rejected expert's opinion as to value based on a capitalization of excess earnings approach, but properly recalculated the value using the expert's approach and figures as adjusted). We note that in valuation cases the trial court has the authority to enlist the aid of a court-appointed expert in order to receive an independent opinion as to the valuation of a business. N.C. Gen. Stat. § 8C-1, Rule 706(a) (1999); *Poore*, 75 N.C. App. at 422, 331 S.E.2d at 272.

It appears that the wide disparity in values assigned to Mark Made may be explained in large part by the emphasis on the Design Compendium-Gucci contract and its treatment as a corporate asset. Yet, it appears from the findings of the trial court that the relationship between Mark Made and Design Compendium was, for all practical purposes, destroyed when Mark Made had to seek an advance from Design Compendium in order to carry out the contract. Furthermore, it seems from the testimony of plaintiff-wife that she froze the equity line on 9 August 1996, prior to the separation of the parties on 16 September 1996. Both husband and wife testified that the wife's action occurred *prior* to their separation. Yet, the trial court found that "[i]mmediately *following* the separation of the parties, Wife caused the equity line of credit . . . to be frozen, and Husband had no

access to other operating capital." (Emphasis added.) The trial court apparently relied on this finding when it found that "[o]n the date of separation, had nothing else occurred, the evidence is persuasive that Mark Made was in fact a promising company with a bright future possessing a valuable contract right and had a sufficient operating history and prospects to make it a highly marketable entity."

The freezing of the equity line and its effects on Mark Made could be properly considered in an appraisal of Mark Made's value on the date of separation. Upon remand, the trial court may receive such additional evidence as is necessary to allow it to arrive at a figure which "reasonably approximates" the valuation of Mark Made.

## II. Distribution

[2] Defendant also assigns error to the distribution made by the trial court. The distribution of the marital estate is left to the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *Smith*, 111 N.C. App. at 470-71, 433 S.E.2d at 203; *see also White v. White*, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985). However, since we are remanding the case for a new valuation of Mark Made, we also vacate the distribution order entered by the trial court. On remand the court should enter a new distribution order following its revaluation of Mark Made. We note that in the prior distribution, the trial court weighed the distributional factors and concluded that an unequal distribution in favor of defendant would be equitable. However, it is not clear from the record that the trial court considered that by its assignment of a sharply devalued Mark Made to the defendant, the net effect of the distribution may have been an unequal distribution in favor of plaintiff-wife. On remand, the trial court should make a specific finding as to the value of Mark Made as of the date of distribution, so that it can be certain its distributional intent is carried out.

Those portions of the trial court's order which identify and value marital property, other than Mark Made, are affirmed. We vacate those portions of the order which value Mark Made and remand for a new valuation of Mark Made and entry of a new distribution order.

Affirmed in part, vacated in part and remanded.

Judges MARTIN and TIMMONS-GOODSON concur.