BRENDA QUESINBERRY, Plaintiff v. GARY WAYNE QUESINBERRY, Defendant

No. COA10-639

(Filed 5 April 2011)

**1. Appeal and Error— timeliness of appeal—Rule 59 motion—pending issues**

Defendant timely appealed an equitable distribution judgment where the original period was tolled by a Rule 59 motion, there were other claims pending after the Rule 59 motion was denied, and the notice of appeal was within thirty days from the court's order dismissing those claims.

**2. Divorce— equitable distribution—subject matter jurisdiction**

The trial court had subject matter jurisdiction to distribute items of property which defendant contended belonged to a business that was not joined to the action where defendant had stipulated that those assets were marital property.

**3. Divorce— equitable distribution—marital property—date of valuation**

There was no error in an equitable distribution action where the trial court did not expressly state in its judgment that marital property valuations were based on the date of separation, but the trial court's pretrial order reflected the parties' stipulation as to the separation and valuation date and the court referred to the pre-trial order in its equitable distribution judgment.

**4. Divorce— equitable distribution—marital property—depreciation—credibility of defendant**

The trial court did not abuse its discretion in an equitable distribution action by valuing an account at the amount stipulated by both parties as the date of separation amount despite defendant's unsupported testimony that the value had decreased. The credibility of evidence in an equitable distribution trial was for the trial court to determine.

**5. Appeal and Error— preservation of issues—failure to argue**

An issue regarding the valuation and distribution of certain property in an equitable distribution action was not preserved for appellate review where defendant did not argue that the court improperly accepted his oral stipulation as to the value of the trucks, did not direct the appellate court to any later objection to

his stipulation, and did not argue that the finding was not supported by competent evidence.

### 6. Divorce— equitable distribution—value of business

The trial court did not abuse its discretion in an equitable distribution action in its conclusion that defendant's unsupported assertions about the value of abusiness were not credible or relevant to the value of the business on the separation date.

### 7. Divorce— alimony—pleading

The trial court erred by dismissing defendant's claim for alimony where his pleading, read in its entirety, provided a sufficient basis to give plaintiff fair notice of the ground for the alimony claim.

Appeal by defendant from order entered 19 March 2008 by Judge Charles M. Neaves, Jr., and from orders entered 9 April 2009, 23 November 2009, 14 December 2009, and 15 February 2010, and judgments entered 18 June 2009 and 19 February 2010 by Judge Angela B. Puckett in Surry County District Court. Heard in the Court of Appeals 1 December 2010.

*Randolph and Fischer, by J. Clark Fischer, for plaintiff-appellee.*

*Kenneth T. Davies, for defendant-appellant.*

MARTIN, Chief Judge.

Plaintiff Brenda Quesinberry ("wife") and defendant Gary Wayne Quesinberry ("husband") were married on 7 May 1971 and separated on 9 February 2008. Two children were born of the marriage; both of whom had reached their majority prior to the date of separation.

Wife filed a Complaint for Equitable Distribution on 29 February 2008 in Surry County District Court seeking a greater than one-half share of the marital estate. Husband answered and counterclaimed seeking post-separation support and alimony, an unequal distribution of the marital estate in his favor, divorce from bed and board, and costs and attorney's fees. Wife moved to dismiss husband's claims for post-separation support and alimony pursuant to N.C.G.S. § 1A-1, Rule 12(b)(6). On 12 March 2009, husband voluntarily dismissed his claims for post-separation support and alimony and filed a separate motion for the same later that day. Wife moved to dismiss husband's motion pursuant to N.C.G.S. § 1A-1, Rule 12(b)(1), (b)(4), (b)(5), and (b)(6).

The parties entered into a pre-trial agreement, which was adopted and entered by the court as its Pre-Trial Order on 13 January 2009, in which the parties "disclosed the existence of all property, both separate and marital," and stipulated as to which items were part of the marital estate and to the value of the property as of 9 February 2008, the date of separation. After a five-day hearing attended by both parties, on 18 June 2009, the trial court entered its Judgment of Equitable Distribution/Order ("equitable distribution judgment"). The court determined that an unequal division of the $4,031,099.61 marital estate was equitable, and awarded 45% or assets valued at $1,813,994.85 to wife, and 55% or assets valued at $2,217,104.75 to husband. One of the assets awarded to wife was "all [husband's] right, title and interest in Quesinberry's Garage and Wrecker Service, Inc."

On 29 June 2009, husband filed a motion pursuant to N.C.G.S. § 1A-1, Rule 59 asking the court to vacate its equitable distribution judgment and requesting a new trial in the matter. On 14 December 2009, the court denied husband's Rule 59 motion. On 15 February 2010, the court entered an order granting wife's motion to dismiss husband's claims for spousal support pursuant to N.C.G.S. § 1A-1, Rule 12(b)(6). On 10 March 2010, husband gave notice of appeal from seven of the trial court's orders and judgments, including the 18 June 2009 equitable distribution judgment and the 15 February 2010 order dismissing with prejudice husband's claims for spousal support.

---

## I.

**[1]** Wife first contends husband failed to timely appeal from the court's 18 June 2009 equitable distribution judgment. Wife agrees that husband filed a timely motion pursuant to N.C.G.S. § 1A-1, Rule 59 after the court's judgment was entered, and concedes that such a motion tolls the period for taking appeal pursuant to Appellate Rule 3(c). *See* N.C.R. App. P. 3(c)(3) ("[I]f a timely motion is made by any party for relief under Rules 50(b), 52(b) or 59 of the Rules of Civil Procedure, the thirty day period for taking appeal is tolled as to all parties until entry of an order disposing of the motion and then runs as to each party from the date of entry of the order or its untimely service upon the party, as provided in subdivisions (1) and (2) of this subsection (c)."). Wife argues that the tolling period ended thirty days after husband's Rule 59 motion was denied by the trial court on 14 December 2009, and so asserts that husband's 10 March 2010 notice

of appeal was not timely filed. However, at the time the court entered its order denying husband's Rule 59 motion, husband still had claims pending for post-separation support, alimony, and attorney's fees, which were not disposed of until the court entered its 15 February 2010 order. Thus, any appeal taken from the court's equitable distribution judgment before 15 February 2010 would have been interlocutory, since husband's claims for post-separation support, alimony, and attorney's fees were still pending at that time. *See Veazey v. City of Durham*, 231 N.C. 357, 362, 57 S.E.2d 377, 381 ("An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy."), *reh'g denied*, 232 N.C. 744, 59 S.E.2d 429 (1950); *see, e.g., McIntyre v. McIntyre*, 175 N.C. App. 558, 561-64, 623 S.E.2d 828, 831-32 (2006) (dismissing appeal from equitable distribution order as interlocutory while alimony claim remained pending); *Embler v. Embler*, 143 N.C. App. 162, 165-67, 545 S.E.2d 259, 262-63 (2001) (dismissing appeal from equitable distribution order as interlocutory while alimony claim remained pending). Since husband filed his notice of appeal on 10 March 2010, within the thirty-day period for taking appeal from the court's 15 February 2010 order dismissing his claims for alimony, post-separation support, and attorney's fees, we conclude that husband's appeal from the trial court's 18 June 2009 equitable distribution judgment is properly before us.

## II.

**[2]** Husband first contends the trial court lacked subject matter jurisdiction to enter its equitable distribution judgment because it failed to join Quesinberry's Garage, Wrecker Service & Truck Sales, Inc. ("Quesinberry's Garage") to the action *ex mero motu*. Specifically, husband asserts for the first time on appeal that several items of property distributed to the parties in the court's equitable distribution judgment belonged to Quesinberry's Garage and, thus, could not have been distributed to the parties without the presence of the corporation in the action. Nevertheless, on 13 January 2009, the trial court entered its Pre-Trial Order, signed by both parties and their respective counsel, in which the parties stipulated that all of the assets included on the lengthy itemized list of property attached to the order were marital assets, with the exception of an alarm system and a 1955 Chevrolet, the disposition of which are not at issue on appeal. This list of stipulated marital assets included the eleven items that husband now contends are assets belonging to Quesinberry's Garage.

"A stipulation is a judicial admission." *Rickert v. Rickert*, 282 N.C. 373, 379, 193 S.E.2d 79, 83 (1972). " 'Such agreements and admissions are of frequent occurrence and of great value, as they dispense with proof and save time in the trial of causes. The courts recognize and enforce them as substitutes for legal proof, and there is no good reason why they should not.' " *Id.* at 380, 193 S.E.2d at 83 (quoting *Lumber Co. v. Lumber Co.*, 137 N.C. 431, 438, 49 S.E. 946, 949 (1905)); *see also Despathy v. Despathy*, 149 N.C. App. 660, 662, 562 S.E.2d 289, 291 (2002) ("An admission in a pleading or a stipulation admitting a material fact becomes a judicial admission in a case and eliminates the necessity of submitting an issue in regard thereto to the jury." (internal quotation marks omitted)). North Carolina courts encourage and "look with favor on stipulations, because they tend to simplify, shorten, or settle litigation as well as saving cost to the parties." *Rickert*, 282 N.C. at 379-80, 193 S.E.2d at 83.

In order to "insure that each party's rights are protected and to prevent fraud and overreaching on the part of either spouse," "[a]ny agreement entered into by parties regarding the distribution of their marital property should be reduced to writing, duly executed and acknowledged." *McIntosh v. McIntosh*, 74 N.C. App. 554, 556, 328 S.E.2d 600, 602 (1985). Additionally, oral stipulations that are not reduced to writing will be similarly sufficient to convey the parties' agreement regarding the distribution of their marital assets when it "affirmatively appear[s] in the record that the trial court made contemporaneous inquiries of the parties at the time the stipulations were entered into." *Id.* In such cases, "[i]t should appear that the court read the terms of the stipulations to the parties; that the parties understood the legal effects of their agreement and the terms of the agreement, and agreed to abide by those terms of their own free will." *Id.*

Husband does not argue that he did not understand the legal effect of his agreement or that the court improperly accepted the parties' written stipulations when the court entered its Pre-Trial Order. Nor does husband direct us to any place in the record where he later objected to his stipulation that these eleven assets are marital property, or where he asserted that legal title to these assets is held by Quesinberry's Garage. *See* N.C.R. App. P. 10(a)(1) ("In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context."). Therefore, since husband stipulated that these assets are marital property, we

conclude that husband's contention that the court lacked subject matter jurisdiction to distribute these marital assets without first joining Quesinberry's Garage to the action is without merit and we overrule this issue on appeal.

## III.

[3] Husband next contends the trial court erred by "failing to find date of separation values for numerous marital properties" in its equitable distribution judgment. Husband specifically asserts the court failed to find "date of separation values" for eighteen marital assets. However, as reflected in the court's 13 January 2009 Pre-Trial Order, signed by both parties and parties' counsel, the parties stipulated that the date of valuation for all marital property subject to equitable distribution was 9 February 2008, which was also stipulated as the date of the parties' separation. Although the court referred to its Pre-Trial Order in its equitable distribution judgment, the trial court did not expressly reiterate in its judgment that all of the property valuations were based on the parties' date of separation of 9 February 2008. Although specifying the exact date of valuation in its equitable distribution judgment "might have been preferable," husband has not demonstrated that the trial court used an incorrect date in valuation. *See Patton v. Patton,* 78 N.C. App. 247, 256, 337 S.E.2d 607, 613 (1985) (citing *Gregory v. Lynch,* 271 N.C. 198, 203, 155 S.E.2d 488, 492 (1967) (stating that the burden of showing error falls to the party asserting the same)), *disc. review denied,* 316 N.C. 195, 341 S.E.2d 585, *rev'd in part on other grounds,* 318 N.C. 404, 348 S.E.2d 593 (1986), *appeal after remand,* 88 N.C. App. 715, 364 S.E.2d 700 (1988). In fact, the court's valuation for most of the items husband now challenges was taken either from one or both of the parties' own pre-trial stipulations regarding the value of the property, or from the parties' unchallenged oral stipulations as to the value of the property at trial. Thus, we conclude this argument is also without merit.

## IV.

[4] In its equitable distribution judgment, the court found the following:

33. The Hartford AccountItem #41 on the attached spreadsheet, the testimony of [husband] was that the cashed this account out and that the date of separation value was $59,387.12. He used those funds in purchasing his new home, therefore the Court assigns the value of $59,387.12 to [husband].

Husband challenges the finding, contending the trial court erred by failing to find, as he had testified, that the value of this account had depreciated since the date of separation. We disagree.

"The credibility of the evidence in an equitable distribution trial is for the trial court." *Grasty v. Grasty*, 125 N.C. App. 736, 739, 482 S.E.2d 752, 754, *disc. review denied*, 346 N.C. 278, 487 S.E.2d 545 (1997). "The trial court, as the finder of fact in an equitable distribution case, has the right to believe all that a witness testified to, or to believe nothing that a witness testified to, or to believe part of the testimony and to disbelieve part of it." *Id.* (citation and internal quotation marks omitted).

In the present case, both parties agreed by stipulation in the Pre-Trial Order that the value of this account at the date of separation was $59,387.12. At the hearing, however, husband testified that the account "depreciated. It's went down [sic] in value. It's lost." Husband claimed that the account lost about $6,000 of its value within two months of the date of separation. Other than his testimony, husband did not present any evidence to support his contention. Since it was within the court's province to determine the credibility of husband's unsupported claims of diminution of the value of this account, we conclude that the trial court did not abuse its discretion by valuing the account at the amount stipulated by both parties in the Pre-Trial Order.

V.

**[5]** Husband next purports to challenge the trial court's Finding of Fact 66 in its equitable distribution judgment, in which the court found the following:

> 66.   [T]he Court will move to Item #73 of the attached spreadsheet[, designated as "Trucks for Sell,"] which are trucks located on the property of Quesinberry Garage and Wrecker Service, Inc., there are a number of used trucks which are on the property for sale. The parties having agreed that [husband] could have those trucks for $10,000.00 and the Court hereby assigns it to [husband].

Husband does not argue the court improperly accepted his oral stipulation at trial as to the value of the trucks on the property, nor does husband direct us to any place in the record where he later objected to his stipulation. Husband also does not present argument to suggest that this finding is not supported by competent evidence. Instead, husband asserts that this finding of fact fails to account for wife's tes-

timony that two Peterbuilt trucks were sold post-separation, one for $9,000 and one for $27,000, and asserts that the court's finding does not account for wife's disposition of this property, which wife "put . . . into a business account for [Quesinberry's Garage.]" However, since this contention was not properly preserved for appellate review, we overrule this issue on appeal.

## VI.

[6] Husband next challenges the trial court's valuation of Quesinberry's Garage in its equitable distribution judgment.

"In an equitable distribution proceeding, the trial court is to determine the net fair market value of the property based on the evidence offered by the parties." *Walter v. Walter*, 149 N.C. App. 723, 733, 561 S.E.2d 571, 577 (2002). "In valuing a marital interest in a business, the task of the trial court is to arrive at a date of separation value which reasonably approximates the net value of the business interest." *Offerman v. Offerman*, 137 N.C. App. 289, 292, 527 S.E.2d 684, 686 (2000) (internal quotation marks omitted). "[I]t is imperative that the trial court 'make specific findings regarding the value of a [business] and the existence and value of its goodwill, and should clearly indicate the evidence on which its valuations are based, preferably noting the valuation method or methods on which it relied.' " *Locklear v. Locklear*, 92 N.C. App. 299, 301, 374 S.E.2d 406, 407 (1988) (quoting *Poore v. Poore*, 75 N.C. App. 414, 422, 331 S.E.2d 266, 272, *disc. review denied*, 314 N.C. 543, 335 S.E.2d 316 (1985)), *disc. review allowed*, 324 N.C. 336, 378 S.E.2d 794 (1989); *see also Offerman*, 137 N.C. App. at 293, 527 S.E.2d at 686 ("[T]he requirements and standard of review set forth [in *Poore*] apply to valuation of other business entities as well . . . ." (alterations in original) (internal quotation marks omitted)). "The purpose for the requirement of specific findings of fact that support the court's conclusion of law is to permit the appellate court on review to determine from the record whether the judgment—and the legal conclusions that underlie it—represent a correct application of the law." *Patton*, 318 N.C. at 406, 348 S.E.2d at 595 (internal quotation marks omitted). "On appeal, if it appears that the trial court reasonably approximated the net value of the [business] and its goodwill, if any, based on competent evidence and on a sound valuation method or methods, the valuation will not be disturbed." *Poore*, 75 N.C. App. at 422, 331 S.E.2d at 272. However, the trial court's "obligation to make specific findings regarding the value of any property classified as marital, including

any business owned by one of the parties to a marriage . . . *exists only when there is credible evidence supporting the value of the asset.*" *Grasty*, 125 N.C. App. at 738-39, 482 S.E.2d at 754 (emphasis added) (internal quotation marks omitted).

In the present case, the parties stipulated that Quesinberry's Garage is a marital asset. Based on the court's Pre-Trial Order, wife valued Quesinberry's Garage at $0.00, while husband indicated that the value of this asset was "TBD." In its equitable distribution judgment, the trial court made the following findings with respect to the valuation of Quesinberry's Garage:

54. [Husband] has contended that Quesinberry's Garage and Wrecker Service, Inc., has goodwill value and has tendered into evidence the corporate tax returns of Quesinberry's Garage and Wrecker Service, Inc., for 2005, 2006, and 2007. That the Court finds that the tax returns show that business suffered a significant loss for 2005 and 2006, in excess of $50,000.00 and a loss in 2007 of $6,000.00 since the date of separation [wife] has, with the parties' son operated the business. The Court assigns the corporate entity known as Quesinberry's Garage and Wrecker Service, Inc., to [wife].

55. The Court has been offered no evidence whatsoever where it can find that the goodwill of the business has any value whatsoever, other than simple name recognition.

In his brief, husband concedes that there were no remaining tangible assets of value associated with Quesinberry's Garage, and testified at the hearing that he did not have the business appraised to establish the value, if any, of the goodwill of the business. *See Poore*, 75 N.C. App. at 421, 331 S.E.2d at 271 ("The determination of the existence and value of goodwill is a question of fact and not of law, and should be made with the aid of expert testimony." (citation omitted)). However, husband asserts the trial court erred because its valuation "ignored" husband's testimony that the gross receipts from sometime at or after 1986 until sometime during or before 2001 were "close to a million dollars every year," and that the profits during those years averaged thirty-five percent. Nevertheless, since "[t]he trial court, as the finder of fact in an equitable distribution case, has the right to believe all that a witness testified to, or to believe nothing that a witness testified to, or to believe part of the testimony and to disbelieve part of it," *see Grasty*, 125 N.C. App. at 739, 482 S.E.2d at 754 (citation and internal quotation marks omitted), we find no error in the trial

court's determination that husband's unsupported assertions were not credible or relevant to its valuation of Quesinberry's Garage as of 9 February 2008. Husband provides no other legal support for his challenge to the trial court's valuation and distribution of Quesinberry's Garage; accordingly, we overrule husband's remaining assertions as to this issue.

## VII.

**[7]** Finally, husband contends the trial court erred by dismissing with prejudice his claim for alimony pursuant to N.C.G.S. § 1A-1, Rule 12(b)(6). In this respect, we must agree.

Our review of a trial court's ruling with respect to a motion to dismiss made pursuant to N.C.G.S. § 1A-1, Rule 12(b)(6) is *de novo. See Leary v. N.C. Forest Prods., Inc.*, 157 N.C. App. 396, 400, 580 S.E.2d 1, 4, *aff'd per curiam*, 357 N.C. 567, 597 S.E.2d 673 (2003). "A motion to dismiss made pursuant to G.S. 1A-1, Rule 12(b)(6) tests the legal sufficiency of the complaint." *Harris v. NCNB Nat'l Bank of N.C.*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987) (citing *Sutton v. Duke*, 277 N.C. 94, 98, 176 S.E.2d 161, 163 (1970)). "In order to withstand such a motion, the complaint must provide sufficient notice of the events and circumstances from which the claim arises, and must state allegations sufficient to satisfy the substantive elements of at least some recognized claim." *Id.* "The question for the court is whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not." *Id.* "The complaint must be liberally construed, and the court should not dismiss the complaint unless it appears beyond a doubt that the plaintiff could not prove any set of facts to support his claim which would entitle him to relief." *Block v. Cty. of Person*, 141 N.C. App. 273, 277-78, 540 S.E.2d 415, 419 (2000). "Such a lack of merit may consist of the disclosure of facts which will necessarily defeat the claim as well as where there is an absence of law or fact necessary to support a claim." *Harris*, 85 N.C. App. at 671, 355 S.E.2d at 840-41.

N.C.G.S. § 50-16.3A(a) provides, in part, that "[t]he court shall award alimony to the dependent spouse upon a finding that one spouse is a dependent spouse, that the other spouse is a supporting spouse, and that an award of alimony is equitable after considering all relevant factors . . . ." N.C. Gen. Stat. § 50-16.3A(a) (2009). "To be a dependent spouse, one must be either actually substantially dependent upon the other spouse or substantially in need of maintenance

and support from the other spouse." *Barrett v. Barrett*, 140 N.C. App. 369, 371, 536 S.E.2d 642, 644 (2000) (internal quotation marks omitted). "A spouse is 'actually substantially dependent' if he or she is currently unable to meet his or her own maintenance and support." *Id.* (citing *Williams v. Williams*, 299 N.C. 174, 181-82, 261 S.E.2d 849, 854-55 (1980)); *see also Williams*, 299 N.C. at 180, 261 S.E.2d at 854 ("Th[e] term ['actually substantially dependent'] . . . implies that the spouse seeking alimony must have actual dependence on the other in order to maintain the standard of living in the manner to which that spouse became accustomed during the last several years prior to separation. . . . Thus, to qualify as a 'dependent spouse' . . . [who is 'actually substantially dependent,'] one must be actually without means of providing for his or her accustomed standard of living." (emphasis omitted)). "A spouse is 'substantially in need of maintenance' if he or she will be unable to meet his or her needs in the future, even if he or she is currently meeting those needs." *Barrett*, 140 N.C. App. at 371, 536 S.E.2d at 644-45 (citing *Williams*, 299 N.C. at 180-81, 261 S.E.2d at 855); *see also Williams*, 299 N.C. at 181-82, 261 S.E.2d at 855 (concluding that a person seeking to qualify as a "dependent spouse" who is "substantially in need" "requires only that the spouse seeking alimony establish that he or she would be unable to maintain his or her accustomed standard of living (established prior to separation) without financial contribution from the other"). "To be a supporting spouse, one must be the spouse upon whom the other spouse is either actually substantially dependent or substantially in need of maintenance and support. A surplus of income over expenses is sufficient in and of itself to warrant a supporting spouse classification." *Barrett*, 140 N.C. App. at 373, 536 S.E.2d at 645 (citation and internal quotation marks omitted).

While N.C.G.S. § 50-16.3A "provides no guidance for determining the sufficiency of the pleadings to support a claim for alimony," *Coleman v. Coleman*, 182 N.C. App. 25, 31, 641 S.E.2d 332, 337 (2007), a pleading or motion by which a party makes a claim for alimony "must comply" with N.C.G.S. § 1A-1, Rule 8 and "state the claim with sufficient particularity to give the court and the parties notice of what the party seeking alimony intends to prove in order to establish the party's right to relief and make a demand for judgment for that relief." 2 Suzanne Reynolds, *Lee's North Carolina Family Law* § 9.62, at 433 (5th ed. 1999). "For actions filed after October 1, 1995, the law requires the moving party to prove only that the spouse is dependent, that the other spouse is supporting, and that an award of alimony is

equitable under all the relevant factors." *Id.* § 9.62, at 433-34. Accordingly, "[a]pplying Rule 8 to these elements, the pleading or motion should contain facts addressed to dependency, supporting spouse, and some of the economic and other facts that make an award of alimony equitable under the circumstances." *Id.* § 9.62, at 434. "The statement of the claim on dependent and supporting spouses should include facts that indicate that the petitioner has some shortfall between income and expenses that the other spouse is able to address or that the petitioner will experience such a shortfall." *Id.* (footnote omitted). If the petitioner "offers only the amount of the other spouse's income, the statement of the claim is insufficient on the element of dependent and supporting spouses. However, if the statement also includes factual allegations on the petitioner's needs and inability to meet them, then the statement should be sufficient." *Id.* (footnote omitted). "In sum, only in the rare case would a statement of a claim for alimony fail the notice requirements of Rule 8 . . . ." *Id.* § 9.62, at 435.

In his motion, husband included the following allegations:

7.  That [husband] is a dependent spouse within the meaning and provisions of North Carolina General Statutes Section 50-16.1A *et seq.*; that [husband] is actually substantially dependent upon [wife] for his maintenance and support; that [husband] is in need of subsistence from [wife] to maintain a home for himself; that [husband] is without funds with which to subsist during the pendency of this action for but not limited to the following;

    a.  That [husband] hereby incorporates by way of reference [husband]'s Affidavit of Monthly Needs and Expenses, filed on or about August 25, 2008, in which [husband] asserts that he is the [sic] need of financial support from [wife] specifically but not limited to his assertion that the only form of income that he receives is from Social Security Disability in the amount of $1950 per month. Further, [husband] asserts that his total needs and expenses as of said date is $4908.08 per month.

    b.  That [husband] has been receiving Social Security Disability Benefits for some time as a result of work related injuries believed to be sustained during his employment with Quesinberry's Garage, Wrecker Service & Truck Sales, Inc, located at 1620 Holly Spring Rd, Mt. Airy, North Carolina

(hereinafter "Garage") during the course of the parties marriage and prior to the date of separation.

c. That up until the parties date of separation, [husband] was employed at "Garage" in a managerial capacity but did not directly receive significant income.

d. That specifically since the Order of Interim Distribution on March 10, 2008, [husband] has not received any compensation, direct or indirect as a result of the operation of the marital property considered "Garage."

e. That for some time after the date of separation, [husband] was unable to afford his own separate housing in that specifically he resided with the parties Daughter, Emily, her husband, and their three minor children.

f. That to date [husband] is in need of support from [wife] to maintain his accustomed standard of living established during the marriage.

8. That [wife] is a supporting spouse within the meaning and provisions of North Carolina General Statutes Section 50-16.1A *et seq.*; that [wife] is an able-bodied person capable of gainful employment; that [wife] should contribute to the support of [husband]; that [husband] is entitled to a substantial award of post separation support.

a. That as a result of the aforementioned Interim Order, [wife] was granted the physical possession and operating authority of "Garage" and further granted full operating authority, without interference from [husband].

b. That based upon information and belief and previous sworn testimony of [wife], [wife] does receive a significant income as a result of her employment and full operating authority of "Garage."

9. That the court base its award on the financial needs of the parties, considering the parties' accustomed standard of living, the present employment income and other recurring earnings of each party from any source, their income-earning abilities, the separate and marital debt service obligations, those expenses reasonably necessary to support each of the parties, and each party's respective legal obligations to support any other persons.

10. That the resources of [husband] are not adequate to meet his reasonable needs and [wife] has the ability to pay.

11. That at all times throughout the marriage, [husband] has been a faithful and dutiful husband to [wife]; that at no time during the marriage did [husband] commit any act of marital misconduct within the meaning and provisions of North Carolina General Statutes Section 50-16.1A; and that the conduct on the part of [wife] has been without adequate provocation on the part of [husband].

Upon reviewing these allegations, the trial court concluded the following: husband "has not put the Court on notice of any specific transactions or occurrences that demonstrate he is a dependent spouse and that [wife] is a dependent [sic] spouse"; husband "only substantially regurgitated the statutory language of the applicable statutes . . . in an attempt to demonstrate his status as a dependent spouse and [wife's] status as a supporting spouse"; and that husband's allegations "are insufficient to put the Court on notice that an award of . . . alimony would be equitable under the circumstances of this action." In support of its order dismissing husband's alimony claim with prejudice, the trial court relied upon *Manning v. Manning*, 20 N.C. App. 149, 201 S.E.2d 46 (1973), and *Coleman v. Coleman*, 182 N.C. App. 25, 641 S.E.2d 332 (2007). We find these cases distinguishable from the present case.

In *Manning*, the plaintiff-wife seeking alimony filed a complaint in which the allegations supporting her claim for alimony tracked almost verbatim the language of two of the ten subsections of the now-repealed N.C.G.S. § 50-16.2, which enumerated the then-ten grounds for an alimony claim. *Manning*, 20 N.C. App. at 154-55, 201 S.E.2d at 50. Upon review, this Court determined that "the complaint merely allege[d] that the defendant[-husband] treated the plaintiff [-wife] cruelly and offered indignities to her person, using the exact language of the alimony statute, but it d[id] not (as required by Rule 8(a)) refer to any 'transactions, occurrences, or series of transactions or occurrences, intended to be proved.' " *Id.* Because the complaint did not "mention any specific act of cruelty or indignity committed by the defendant[-husband]," and "d[id] not even indicate in what way defendant[-husband] was cruel to plaintiff[-wife] or offered her indignities," we speculated, "[f]or all the complaint shows, the alleged cruelty and alleged indignities may consist of nothing more than occasional nagging of the plaintiff[-wife] or pounding on a table." *Id.* at 155, 201

S.E.2d at 50. Thus, we concluded that "[s]uch a complaint does not give defendant[-husband] fair notice of plaintiff[-wife's] claim" and serves only as a "mere[] . . . assertion of a grievance." *Id.* (internal quotation marks omitted). *But cf. Ross v. Ross*, 33 N.C. App. 447, 455-56, 235 S.E.2d 405, 410-11 (1977) (concluding that plaintiff–wife's allegations "were sufficient to comply with the notice requirements of Rule 8" where plaintiff-wife alleged that defendant-husband "assaulted and beat her; that he cursed and used vulgar language toward her; that he threatened her physically; that he appropriated her personal assets; and that he forced her to abandon the home on 22 May 1975 and has since failed to provide for her").

Similarly, in *Coleman*, defendant-wife asserted in her answer to plaintiff-husband's complaint that he "had agreed to pay and had been paying certain household bills and debts of the parties," and asserted a counterclaim stating only that she was " 'request[ing] alimony payments from [p]laintiff[-husband] in the amount of $1500.00 per month.' " *Coleman*, 182 N.C. App. at 30-32, 641 S.E.2d at 337-38 (first alteration in original). Relying on *Manning*, this Court stated that a "bare request for $1,500 in monthly alimony payments provides no notice of any grounds upon which [defendant—wife] may be pursuing and entitled to alimony, such as her status as the dependent spouse." *Id.* at 31, 641 S.E.2d at 338. We determined that the allegations of the answer "were made to refute [plaintiff-husband's] allegation that there were 'no issues pending between the parties,' " and were not "adequate to put [plaintiff-husband] on notice that those allegations constituted 'the transactions, occurrences, or series of transactions or occurrences' intended to be proved by [defendant-wife] in support of her claim for alimony." *Id.* at 31-32, 641 S.E.2d at 338. "Without a sufficient indication in [defendant-wife's] counterclaim that [plaintiff-husband's] payment of certain household bills formed the basis for her contention that she was entitled to alimony, the pleading fail[ed] to make the connection between her bare assertion to a right to alimony" and the allegations in her responsive answer. *Id.* at 32, 641 S.E.2d at 338.

In the present case, husband alleged that he was in need of support from wife to "maintain his accustomed standard of living established during the marriage," but did not specifically allege what that standard of living entailed. Nevertheless, husband addressed the shortfall between his income and expenses, alleging that "for some time" during the course of the parties' marriage and prior to the date of separation, husband received and still currently receives $1,950.00 per month in

Social Security Disability Benefits and that his "total needs and expenses" require $4,908.08. He also alleged that he was employed at Quesinberry's Garage "up until the parties['] date of separation" and did not "directly receive significant income" as a result of his position, and that he similarly has not received any compensation from the operation of the family business since at least one month following the parties' separation. He further alleged that he resided with the parties' daughter "for some time" because he was "unable to afford his own separate housing." Husband also made allegations regarding wife's ability to address husband's income-expense shortfall by alleging that wife, unlike husband, was "an able-bodied person capable of gainful employment," has been in possession and control of the family business since at least one month following the parties' separation, and "does receive a significant income as a result of her employment and full operating authority of [Quesinberry's Garage]." While husband's allegation that wife's income is "significant" does not include any specific reference to the amount of wife's income, and husband failed to include any allegations regarding wife's expenses so as to show that she retains a surplus of income after meeting her expenses, we believe husband's pleading, when read in its entirety, provided a sufficient basis to give wife fair notice of the grounds for husband's claim for alimony. Thus, we reverse the trial court's 15 February 2010 order dismissing husband's claim for alimony with prejudice, and remand for further proceedings on this claim.

The remaining issues on appeal for which husband failed to present argument supported by persuasive or binding legal authority are deemed abandoned. *See* N.C.R. App. P. 28(a).

Affirmed in part; Reversed in part and Remanded.

Judges McGEE and ERVIN concur.