BRYANT, Judge.
Where the evidence supports the trial court's findings and conclusions, we affirm those portions of the court order. Where the trial court failed to classify and distribute debt, we reverse and remand for further findings of fact. We remand the matter of a fraudulent mortgage on marital property entered into following the date of separation for further findings of fact and conclusions. We affirm the portion of the trial court's order directing defendant to make periodic payments to plaintiff.
On 8 October 2013, plaintiff Sausan Abdeljabar filed a complaint against her husband, defendant Yousel Khalil, in Nash County District Court. Plaintiff alleged that she was a dependent spouse and that defendant, her husband, abandoned her without just cause or excuse. Plaintiff sought a divorce from bed and board, equitable distribution, post-separation support, alimony, child custody, attorney fees, injunctive relief, and interim distribution.
On 30 June 2015, the Nash County District Court entered an order on plaintiff's motion for an interim distribution. The trial court awarded plaintiff possession of and title to a vehicle, a Chevrolet Tahoe; $7,125.00, representing one-half of rental receipts received from property located at 1504 Homestead; and going forward, $375.00 per month (one-half of the Homestead monthly rental income).
A hearing on plaintiff's complaint for equitable distribution was heard in July 2016 and on 20 October 2016, the court entered its equitable distribution order. Plaintiff and defendant were married in October 1981, as parties to an arranged marriage. At the time, defendant was twenty-seven years old; plaintiff was fourteen years old. The marriage lasted thirty-five years and produced five children. Defendant was self-employed and controlled all of the finances; plaintiff tended to the home and children. Since 1998, defendant was the owner and operator of a retail establishment, Party World of North Carolina, Inc. ("Party World"). Defendant and plaintiff owned a number of residential properties in Rocky Mount at the following addresses: 117 S. Applewood, 105 Joelene Court, 3316 Winstead Road, 1504 Homestead, and 329 Oakdale Road. They also owned a strip mall in Roanoke Rapids. Following the parties' separation, plaintiff resided in the marital residence located on Joelene Court; defendant moved into one of the rental properties. Thereafter, defendant suffered a financial downturn. Party World was sold to a third party, and defendant failed to make mortgage payments on the real properties. All real properties, except those located on Homestead and Oakdale, were foreclosed on during the period of separation. Plaintiff had no means of support other than the financial assistance she received from her children. Defendant had failed to pay plaintiff $7,125.00, as ordered in the 30 June 2015 interim distribution order, having paid only $3,500.00.
During the equitable distribution hearing, plaintiff presented evidence that as of 31 July 2012, Party World had assets totaling $202,224.54, and she testified that on the date of separation, Party World was worth $250,000.00. Defendant testified that Party World had no value on the date of separation. In regard to the real properties, both parties presented differing accounts of the value of each property and outstanding mortgage debt. As to the Homestead property, the court found that on the date of separation no bank mortgage encumbered the property. But after the date of separation, defendant mortgaged the property to his brother. Plaintiff testified that defendant told her she would receive nothing from the marital estate.
The court made the following distribution of property. From the marital property, plaintiff was distributed a Chevrolet Tahoe valued at $15,000.00, personal household goods valued at $9,840.00, the Homestead property valued at $80,000.00 (which was reduced an additional $20,000.00 due to the cloud on the title), a Jeep Cherokee vehicle valued at $1,000.00, and gold valued at $10,000.00. Plaintiff also received $3,500.00 in rental income from the Homestead property as divisible property. From the marital property, defendant was distributed a Cadillac Escalade valued at $17,000.00; the Oakdale Road property valued at $45,000.00, with a mortgage debt of $31,500.00; the S. Applewood property valued at $115,000.00, with a mortgage debt of $57,522.00; the Joelene Ct. property valued at $320,000.00, with a mortgage debt of $255,100.00; the Winstead Road property valued at $125,000.00, with a mortgage debt of $112,000.00; the Roanoke Rapids property valued at $200,000.00, with a mortgage debt of $135,000.00; and Party World valued at $100,000.00 (based upon income stream valuation).
As a distribution of divisible property, defendant was awarded rental income from the Homestead property valued at $14,750.00. The court found that the value of the marital property on the date of separation was $446,722.00. Plaintiff was distributed $99,370.00, and defendant was distributed $347,582.00. An equal distribution was equitable, and the court ordered that "each party should receive $223,461.00." Thus, plaintiff was entitled to payment from defendant in the amount of $124,121.00. The court ordered that defendant pay plaintiff in seventy-two monthly installments of $1,724.00. The deed of trust defendant executed on the Homestead property after the date of separation was defendant's separate property and was based on a fraudulent deed. The court ordered that defendant obtain a cancellation of the deed of trust.
Defendant appeals.
_________________________
On appeal, defendant raises the following issues: whether the trial court erred by (I) failing to classify all property; (II) valuing Party World, Inc.; (III) making findings of fact; (IV) declaring the deed of trust fraudulent; and (V) ordering the distributive award.
Standard of Review
"In appellate review of a bench equitable distribution trial, the findings of fact regarding value are conclusive if there is evidence to support them, even if there is also evidence supporting a finding otherwise." Crutchfield v. Crutchfield , 132 N.C. App. 193, 197, 511 S.E.2d 31, 34 (1999). "This Court is not here to second-guess values of marital and separate property where there is evidence to support the trial court's figures." Mishler v. Mishler , 90 N.C. App. 72, 74, 367 S.E.2d 385, 386, review denied , 323 N.C. 174, 373 S.E.2d 111 (1988). The trial court is not required to make exhaustive findings regarding evidence presented. Armstrong v. Armstrong , 322 N.C. 396, 405, 368 S.E.2d 595, 600 (1988). Rather, the trial court is only required to make specific findings as to the ultimate facts. Embler v. Embler , 159 N.C. App. 186, 189, 582 S.E.2d 628, 631 (2003).
Urciolo v. Urciolo , 166 N.C. App. 504, 505-06, 601 S.E.2d 905, 907 (2004).
It is well established that where matters are left to the discretion of the trial court, appellate review is limited to a determination of whether there was a clear abuse of discretion. A trial court may be reversed for abuse of discretion only upon a showing that its actions are manifestly unsupported by reason. A ruling committed to a trial court's discretion is to be accorded great deference and will be upset only upon a showing that it was so arbitrary that it could not have been the result of a reasoned decision.
Pellom v. Pellom , 194 N.C. App. 57, 61-62, 669 S.E.2d 323, 325 (2008) (quoting White v. White , 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985) ).
I
Defendant argues that the trial court erred by failing to classify and value all marital and divisible property. More specifically, defendant argues the trial court failed to classify and value: real property passive diminution in value incurred after the parties separated, household property, and the debts. Because we agree with some of defendant's contentions, we affirm in part and reverse and remand in part.
Pursuant to North Carolina General Statutes, section 50-20, "[u]pon application of a party, the court shall determine what is the marital property and divisible property and shall provide for an equitable distribution of the marital property and divisible property between the parties in accordance with the provisions of this section." N.C. Gen. Stat. § 50-20(a) (2017).
The first step of the equitable distribution process requires the trial court to classify all of the marital and divisible property-collectively termed distributable property-in order that a reviewing court may reasonably determine whether the distribution ordered is equitable. [T]o enter a proper equitable distribution judgment, the trial court must specifically and particularly classify and value all assets and debts maintained by the parties at the date of separation . In determining the value of the property, the trial court must consider the property's market value, if any, less the amount of any encumbrance serving to offset or reduce the market value. Furthermore, in doing all these things the court must be specific and detailed enough to enable a reviewing court to determine what was done and its correctness.
Hill v. Hill , 244 N.C. App. 219, 223-24, 781 S.E.2d 29, 33-34 (2015) (alternation in original) (citations omitted).
A. Passive diminution in value of real property
Defendant contends that the trial court failed to classify the passive diminution in value of real property as divisible property. On appeal, defendant acknowledges that the parties acquired six parcels of real property during the marriage; however, he contends that during the period of separation, four of those properties were lost to foreclosure. Defendant argues that those four properties had no value at the time the court distributed them.
Pursuant to section 50-20,
(4) "Divisible property" means all real and personal property as set forth below:
a. All appreciation and diminution in value of marital property and divisible property of the parties occurring after the date of separation and prior to the date of distribution, except that appreciation or diminution in value which is the result of postseparation actions or activities of a spouse shall not be treated as divisible property.
N.C.G.S. § 50-20(b)(4) a.
"[L]ay opinions as to the value of the property are admissible if the witness can show that he has knowledge of the property and some basis for his opinion." Finney v. Finney , 225 N.C. App. 13, 16, 736 S.E.2d 639, 642 (2013) (internal quotation marks omitted). "Unless it affirmatively appears that the owner does not know the market value of his property, it is generally held that he is competent to testify as to its value." Goodson v. Goodson , 145 N.C. App. 356, 361, 551 S.E.2d 200, 204 (2001) (internal quotation marks omitted).... "Rather, an owner is deemed to have sufficient knowledge of the price paid [for his land], the rents or other income received, and the possibilities of the land for use, [and] to have a reasonably good idea of what [the land] is worth." Id. at 361, 551 S.E.2d at 205 (alterations in original) (internal quotation marks omitted).
Hill , 244 N.C. App. at 229, 781 S.E.2d at 37 (alternations in original).
Defendant does not contest the trial court's findings classifying the six real properties acquired during the marriage as marital property or the value attributed to those real properties on the date of separation. Defendant challenges the trial court's failure to assess what he alleges as a decrease in value of the properties on the date of distribution as divisible property given testimony that four of the properties had been foreclosed upon during the period of separation.
Under the plain language of [ N.C. Gen. Stat. § 50-20(a)(b)(4)(a) (2007) ], all appreciation and diminution in value of marital and divisible property is presumed to be divisible property unless the trial court finds that the change in value is attributable to the postseparation actions of one spouse. Where the trial court is unable to determine whether the change in value of marital property is attributable to the actions of one spouse, this presumption has not been rebutted and must control.
Wirth v. Wirth , 193 N.C. App. 657, 661, 668 S.E.2d 603, 607 (2008) (citation omitted). "[D]etermining the credibility of the evidence [is] the court's province as finder of the facts." Nye v. Nye , 100 N.C. App. 326, 327, 396 S.E.2d 91, 92 (1990) (upholding the trial court's determination that the defendant's company stock had no value and would not appreciate despite contrary evidence presented by the plaintiff's expert where the record indicated that trial court did not disregard the plaintiff's witness's testimony, "it simply did not believe it").
At trial, defendant made blanket assertions that four of the parties' six real properties had been foreclosed upon. However, defendant failed to support these assertions with any documentation. Moreover, we note that defendant testified that he mortgaged real properties located on Joelene Ct. (plaintiff's residential property) and Winstead Rd. after the date of separation, and the properties located at South Applewood and Oakwood Rd. were deeded to subsequent owners with the agreement that the new owners would continue the mortgage payments. Plaintiff testified that during the course of the marriage, defendant excluded her from financial decisions regarding his business and the couple's real property investments; however, prior to the date of separation, defendant never indicated there were any problems making mortgage payments or paying bills.
In its 20 October 2016 order, the trial court found that, as to the real property located on Oakdale Road, defendant testified that "he received $5,000.00 pursuant to an option contract" for the property and that as to the properties located on S. Applewood, Joelene Court, Winstead Road, and in Roanoke Rapids, defendant testified that each was foreclosed on "because [defendant] could not continue to pay the mortgage[s]." But in its award, the trial court distributed each of these real properties as part of defendant's marital property distribution.
On appeal, defendant argues that the trial court failed to consider the diminution in property values due to foreclosures after the date of separation. However, the order does not indicate that the trial court failed to consider defendant's evidence of diminution of property value; the trial court simply did not believe defendant's testimony. See id. ("For a fact finder to disbelieve the testimony of a witness is not an error of law."). As we can discern no error in the trial court's failure to attribute the asserted foreclosure of the real properties located on Oakdale Road, S. Applewood, Joelene Court, Winstead Road, and in Roanoke Rapids as passive diminution in value, we overrule defendant's argument on this point.
B. Classification and Valuation of Household Property
Defendant contends that the trial court failed to individually classify and value each item of household property and that this failure prejudices him on appeal by precluding appellate review.
Pursuant to General Statutes, section 50-20, " 'Marital property' means all real and personal property acquired by either spouse or both spouses during the course of the marriage and before the date of the separation of the parties, and presently owned...." N.C. Gen. Stat. § 50-20(b)(1) (2017).
At trial, both parties testified to the value of individual household goods purchased during the course of the marriage and to the value of the property on the date of separation. Both parties provided the trial court with exhibits identifying ninety-three individual household items, including: personal clothing, perfumes, bedroom furniture, mattresses, bedroom and bathroom linens, living room furniture, lamps, rugs, pictures, computers, televisions, washers and dryers, refrigerators, miscellaneous tools, plant pots, kitchen utensils, and kitchen plates; and a proposed value for each. Plaintiff proposed a total value of $7,155.00; defendant proposed $105,190.38.
The trial court properly classified the parties' personal household goods as marital property and valued the property in lump sum as worth $9,840.00, which the court awarded to plaintiff. See id.
In valuing individual household property,
the trial court must consider the property's market value, if any, less the amount of any encumbrance serving to offset or reduce the market value. Furthermore, in doing all these things the court must be specific and detailed enough to enable a reviewing court to determine what was done and its correctness.
Robinson v. Robinson , 210 N.C. App. 319, 323, 707 S.E.2d 785, 789 (2011) (citation omitted). "However, where all the personal property classified as marital is distributed to one party, as here, there is no purpose served in requiring the trial court to place a value on each individual item." Atkins v. Atkins , 102 N.C. App. 199, 209, 401 S.E.2d 784, 789 (1991) ; see also Urciolo , 166 N.C. App. at 506, 601 S.E.2d at 907 ("The trial court is not required to make exhaustive findings regarding evidence presented. Rather, the trial court is only required to make specific findings as to the ultimate facts." (citations omitted) ). We overrule defendant's argument on this point.
C. Classification and Valuation of the Parties' Debts
Defendant next contends that the trial court failed to classify, value, and distribute the parties' debts.
The first step of the equitable distribution process requires the trial court to classify all of the marital and divisible property-collectively termed distributable property-in order that a reviewing court may reasonably determine whether the distribution ordered is equitable. In fact, to enter a proper equitable distribution judgment, the trial court must specifically and particularly classify and value all assets and debts maintained by the parties at the date of separation.
Hill v. Hill , 229 N.C. App. 511, 516, 748 S.E.2d 352, 357 (2013) (emphasis added) (quoting Robinson , 210 N.C. App. at 323, 707 S.E.2d at 789 ).
The party claiming the property to be marital must meet [his] burden by showing by the preponderance of the evidence that the property: (1) was "acquired by either spouse or both spouses;" and (2) was acquired "during the course of the marriage;" and (3) was acquired "before the date of separation of the parties;" and (4) is "presently owned."
Riggs v. Riggs , 124 N.C. App. 647, 650, 478 S.E.2d 211, 213 (1996) (quoting Atkins , 102 N.C. App. at 206, 401 S.E.2d at 787-88 ). "If the party claiming the property to be marital does not meet his burden of showing that the property was acquired during the course of the marriage, the property does not immediately become, as a matter of law, separate property." Atkins , 102 N.C. App. at 206-07, 401 S.E.2d at 788.
In Johnson v. Johnson , this Court considered whether a trial court's failure to identify and distribute a defendant's military retirement pension as part of the marital estate was error. 230 N.C. App. 280, 750 S.E.2d 25 (2013). In its findings of fact, the trial court stated that
[n]o competent evidence was offered as to the value of this item. ... The Plaintiff argued the Court should rely on [the] Defendant's estimation of his monthly retirement income, should he retire in 2012, as proof of overall net value. There was no evidence offered as to the Defendant's basis for his estimation or how the Defendant calculated his estimation. ... [T]he Court does not have sufficient competent evidence to attempt to value the Defendant's retirement. The Court must determine a value supported by evidence in the record. ... Therefore, the Court finds, due to the lack of competent evidence, it is unable to value this item and it cannot be considered as part of equitable distribution. However, the Court will consider this item as a distributional factor.
Id. at 284-85, 750 S.E.2d at 29. This Court noted that a military pension was eligible to be classified as marital property under the federal Uniform Services Former Spouses' Protection Act. Id. at 285, 750 S.E.2d at 29. However, "[i]t was [the] plaintiff who sought to have [the] defendant's pension classified as marital property, who had the burden of showing that it was marital property, and of presenting evidence to support a valuation." Id. at 287, 750 S.E.2d at 30. "[T]here was no testimony as to the value of defendant's pension as of the date of separation." Id. at 289, 750 S.E.2d at 31. Thus, the plaintiff failed to meet this burden. Id. at 287, 750 S.E.2d at 31. This Court held that the trial court's finding on the distribution of the defendant's pension (or lack thereof) was supported by the record evidence and that the findings supported the conclusion of law. Id. at 289, 750 S.E.2d at 32. Accordingly, the Court held "the trial court did not abuse its discretion in not assigning a value to defendant's pension or distributing the pension." Id. ; see also Albritton v. Albritton , 109 N.C. App. 36, 426 S.E.2d 80 (1993) (holding the trial court did not abuse its discretion by failing to value the defendant's pension where the plaintiff failed to meet her burden of proof and there was insufficient evidence presented to determine the value of the pension); id. at 40-41, 426 S.E.2d at 83 ("This same burden of proof applies whether we are dealing with marital debts or marital assets.").
In his brief to this Court, defendant points to evidence presented at trial regarding the following alleged marital debts:
1. $7,124.00 in attorney's fees and other fees related to immigration matters;
2. $15,000.00 borrowed from Yousef Shalash;
3. $57,000.00 in rent owed to Chambliss and Rabil (for Party World);
4. $65,000.00 owed to Husni Othman;
5. $1,488.05 owed to Capital One;
6. $15,600.00 owed to Sam's Club;
7. $11,241.34 owed to Nash General Hospital; and
8. $1,476.00 for medical treatment in February 2013.
The trial court order mentions only the hospital debt: "The Hospital debt shall be the responsibility of ... Defendant with a date of separation balance of $1,546.00." The trial court made a finding of fact that "Defendant presented testimony of rental debt and other debts but no evidence of collection and therefore the [c]ourt finds no evidence as [to the] value of these items at the date of separation and [thus, they are] not subject to distribution by the [c]ourt."
While a court may determine that a debt is invalid or that its value is not ascertainable given the competent evidence before the court, we find no authority to support the proposition that evidence of collection is required before a court can classify and distribute debt as marital property. See generally Eason v. Taylor , --- N.C. App. ----, ----, 784 S.E.2d 200, 204 (2016) ("The trial court seemed to consider the fact that the parties had mostly debt as rendering the plaintiff's claim as unworthy of consideration. But the trial court must address the classification, valuation, and distribution of the property and debt, regardless of the value. See generally N.C. Gen. Stat. § 50-20."). Accordingly, we remand the matter to the trial court to classify and distribute the above debts in accordance with General Statutes, section 50-20, based on evidence already made part of the court record.
II
Defendant argues that the trial court erred by valuing Party World at $100,000.00. Defendant contends that the trial court's order provides insufficient findings of fact to support this conclusion. We agree.
[T]here is no single best approach to valuing an interest in a ... [business], and ... various appraisal methods can and have been used to value such interests....
....
The valuation of each individual ... [business] will depend on its particular facts and circumstances. In valuing a ... [business], a court should consider the following components ... : (a) its fixed assets including cash, furniture, equipment, and other supplies; (b) its other assets including accounts receivable and the value of work in progress; (c) its goodwill, if any; and (d) its liabilities. Among the valuation approaches courts may find helpful are: (1) an earnings or market approach, which bases the value of the ... [business] on its market value, or the price which an outside buyer would pay for it taking into account its future earning capacity; and (2) a comparable sales approach which bases the value of the ... [business] on sales of similar businesses or practices. Courts might also consider evidence of offers to buy or sell the particular ... [business] or an interest therein. If the ... [business] is conducted as a partnership, and the value of the ... [business] or an interest therein is set in a partnership or redemption agreement, then the value set in the agreement should certainly be considered but should not be treated as conclusive. Other guidelines and valuation approaches have also been suggested and they too may be of assistance to courts.
Poore v. Poore , 75 N.C. App. 414, 419-20, 331 S.E.2d 266, 270 (1985) (citations omitted); see also Offerman v. Offerman , 137 N.C. App. 289, 293, 527 S.E.2d 684, 686 (2000) ("[T]he requirements and standard of review set forth [in Poore ][, addressing the valuation of professional practices,] apply to valuation of other business entities as well[.]" (first and second alteration in original) (citations omitted) ).
[I]t is imperative that the trial court make specific findings regarding the value of a [business] and the existence and value of its goodwill, and should clearly indicate the evidence on which its valuations are based, preferably noting the valuation method or methods on which it relied. The purpose for the requirement of specific findings of fact that support the court's conclusion of law is to permit the appellate court on review to determine from the record whether the judgment-and the legal conclusions that underlie it-represent a correct application of the law.... However, the trial court's obligation to make specific findings regarding the value of any property classified as marital, including any business owned by one of the parties to a marriage ... exists only when there is credible evidence supporting the value of the asset .
Quesinberry v. Quesinberry , 210 N.C. App. 578, 585-86, 709 S.E.2d 367, 373-74 (2011) (alterations in original) (citations omitted).
"On appeal, if it appears that the trial court reasonably approximated the net value of the [business] and its goodwill, if any, based on competent evidence and on a sound valuation method or methods, the valuation will not be disturbed." Id. at 585, 709 S.E.2d at 374 (alteration in original) (quoting Poore , 75 N.C. App. at 422, 331 S.E.2d at 272 ). But where a trial court has failed to identify the evidence on which it based its valuation of a business or the method it used to reach its figure, we have reversed and remanded the case to the trial court for further findings of fact on the valuation. See Fitzgerald v. Fitzgerald , 161 N.C. App. 414, 420, 588 S.E.2d 517, 522 (2003) (reversing and remanding the trial court's order on equitable distribution where the trial court rejected the business valuation of experts from both parties but failed to identify the evidence on which it based its valuation of the business or the method it used to reach its figure).
Here, the trial court made the following unchallenged findings of fact:
25. The Plaintiff presented evidence of the July 31, 2012 Compilation Report for Party World of North Carolina, Inc. which indicated it had total assets of $202,224.54 as of July 31, 2012.
26. The plaintiff presented testimony Party World of North Carolina, Inc. was worth $250,000.00 at the date of separation and the Defendant presented testimony there was no value ($0.00) at the date of separation.
Based on these findings, the court concluded that "Defendant shall receive the following marital property: ... Party World of North Carolina, Inc. valued at $100,000.00 based upon income stream valuation. Specifically the [c]ourt finds it provided a good living and $100,000.00 in gold, cash, real estate and fine furniture."
The trial court's findings of fact do not support its conclusion that Party World of North Carolina, Inc. had a value of $100,000.00 on the date of separation. There is no finding regarding Party World's income stream or evidence pointed to by either party indicating that Party World's valuation in 2013 through the date of separation was approximately $100,000.00. Accordingly, we remand this matter to the trial court for further findings of fact.
III
Defendant argues that the trial court erred by making findings of fact unsupported by record evidence. Specifically, defendant contends that the trial court erred in finding the value of the real properties located at Homestead Road and Joelene Court, as well as the court's finding that defendant's debt to Abdel Khalil was defendant's separate property. We disagree.
In determining the value of the property, the trial court must consider the property's market value, if any, less the amount of any encumbrance serving to offset or reduce the market value. Furthermore, in doing all these things the court must be specific and detailed enough to enable a reviewing court to determine what was done and its correctness.
Hill , 244 N.C. App. at 223-24, 781 S.E.2d at 33-34 (citations omitted). However, "[t]he trial court, as the finder of fact in an equitable distribution case, has the right to believe all that a witness testified to, or to believe nothing that a witness testified to, or to believe part of the testimony and to disbelieve part of it." Quesinberry , 210 N.C. App. at 584, 709 S.E.2d at 373 (citation omitted).
A. Valuation of Homestead Road Property
Defendant contends that the trial court erred in reducing the valuation of the property located on Homestead Road by $20,000.00 due to the legal fees plaintiff may incur while seeking to clear title to the property (as the property was distributed to her), while also ordering defendant to remove the encumbrance to the property title.
The trial court found that
24. Plaintiff presented evidence that ... Homestead was deeded to ... Defendant in his name only, nothing was owed on it at the time of separation, however, after the parties separated ... Defendant executed a deed of trust ... to his brother, Abdel R. Khalil, a resident of New York City, in the amount of $72,000.00.
....
27. The parties presented evidence on the value of the real property acquired during the marriage as follows:
a. ... Homestead Road, Rocky Mount, North Carolina: Plaintiff presented evidence it was $90,925.00 with nothing owed at the date of separation. Defendant testified it was worth $80,000.00 and a debt owed to his brother for $72,000.00;
....
32. Specifically the [c]ourt finds the following division of marital and divisible property to be equitable:
a. Plaintiff shall receive the following marital property:
....
ii. ... Homestead, Rocky Mount, North Carolina valued at $80,000.00 but reduced by $20,000.00 due to the cloud on title from Defendant's action in mortgaging said property to his brother thereby rendering a reduced value of $60,000.00
....
38. The [c]ourt finds the Deed of Trust in the amount of $72,000.00 executed by ... Defendant to his brother, Abdell Kahil [sic] on ... Homestead, Rocky Mount, North Carolina was fraudulent and done in an effort to encumber the marital property and prevent ... Plaintiff wife in getting anything of value from the marital estate.
It appears that because defendant mortgaged the Homestead Road property following the date of separation-encumbering the marital property-the trial court acknowledged a property value of $80,000.00 and then reduced that value by $20,000.00 for equitable distribution purposes based on a cloud on the property title.
Upon review of the court's order, the findings of fact and conclusions set forth are specific enough to enable this Court to determine what was done and its correctness. See Hill , --- N.C. App. at ----, 781 S.E.2d at 33-34. Moreover, defendant has failed to illustrate how the trial court's ruling was so arbitrary that it could not have been the result of a reasoned decision. Thus, defendant has failed to establish an abuse of discretion. See Pellom , 194 N.C. App. at 61-62, 669 S.E.2d at 325. We overrule this argument.
B. Valuation of the Joelene property
Defendant contends that the trial court erred by valuing the real property located on Joelene Court at $320,000.00. As defendant states on appeal, plaintiff testified Joelene Court was purchased in 2010 for $319,000.00, with a tax value of $311,712.00, and defendant testified the property was purchased for $320,000.00 but declined to $311,000.00 in value. Defendant contends the trial court lacked evidence to support its finding that the value of Joelene Court was worth $320,000.00 on the date of separation.
In its order, the trial court found that as to "Joelene Court, Rocky Mount, North Carolina: Plaintiff presented evidence it was worth $330,000.00 and carried $255,100.00 in mortgage debt at the date of separation. Defendant presented evidence it was worth $320,000.00 but testified it was foreclosed because he could not continue to pay the mortgage." Based on this finding, the court distributed the marital property to defendant as follows: "Joelene Ct, Rocky Mount, North Carolina valued at $320,000.00 together with debt of $255,100.00 with a net value of $64,900.00."
Here, the order indicates that the trial court believed the Joelene Court property was valued at $320,000.00 when it was purchased in 2010, did not believe the testimony that the property had decreased in value as of the date of separation in September 2013, and believed that any decrease in value occurred post separation. Thus, the trial court's findings of fact and conclusion are specific enough to enable this Court to determine what was done and its correctness. See Hill , 244 N.C. App. at 223-24, 781 S.E.2d at 34. Moreover, the trial court's conclusion and award, as to this point, was not so arbitrary that it could not have been the result of a reasoned decision and was thus not an abuse of discretion. See Pellom , 194 N.C. App. at 61-62, 669 S.E.2d at 325. We overrule this argument.
C. Classification of Abdel Khalil debt
Defendant contends that the record evidence does not support the trial court's finding of fact that the $72,000.00 debt secured by mortgage to the Homestead Road property was defendant's separate property. Defendant argues the evidence indicates defendant incurred the $72,000.00 debt to defendant's brother, Abdel Khalil, during the course of the marriage (as a loan to aid in the operation of Party World) and that though he did not secure the debt by mortgage on the Homestead Road property until after the parties separated, the debt was still marital property. Thus, defendant argues the trial court erred in classifying the debt as defendant's separate property. We disagree.
We note the following findings of fact:
38. The [c]ourt finds the debt owed to Defendant's brother, Abdell Khalil in the amount of $72,000.00 is the separate debt of [defendant] and was incurred after the date of separation.
39. The [c]ourt finds the Deed of Trust in the amount of $72,000.00 executed by ... Defendant to his brother, Abdell Kahil on 1504 Homestead, Rocky Mount, North Carolina was fraudulent and done in an effort to encumber the marital property and prevent ... Plaintiff wife in getting anything of value from the marital estate.
Defendant points to his testimony that he incurred the $72,000.00 debt during the course of the marriage when his brother provided money for defendant's business as needed and that defendant secured the debt following his separation from plaintiff by mortgaging the property on Homestead Road, which was previously unencumbered. Plaintiff, on the other hand testified that defendant entered into the $75,000.00 mortgage on Homestead Road after the parties' separation in September 2013.
"The trial court ... has the right to believe all that a witness testified to, or to believe nothing that a witness testified to, or to believe part of the testimony and to disbelieve part of it." Quesinberry , 210 N.C. App. at 584, 709 S.E.2d at 373 (citation omitted). The trial court's findings indicate that the court did not believe defendant's testimony that he incurred debts to his brother amounting to $72,000.00 during the course of the marriage and before the date of separation. Moreover, the court did not believe that the mortgage of the Homestead Road property secured a valid debt. Therefore, the evidence supports the trial court's finding that the debt was not incurred during the marriage and before the date of separation. The trial court's finding and distribution of the debt as defendant's separate property is not manifestly without reason. See Pellom , 194 N.C. App. at 61-62, 669 S.E.2d at 325 ("A trial court may be reversed for abuse of discretion only upon a showing that its actions are manifestly unsupported by reason."). Accordingly, we uphold the trial court's findings and conclusion and overrule defendant's argument.
D. Valuation of the marital estate
Defendant argues the trial court failed to classify and value all marital and divisible property, and thus, the court's findings regarding the value and distribution of the marital estate was erroneous.
As we have already addressed defendant's contentions, supra , we need not consider them further.
IV
Defendant argues that the trial court erred by declaring a deed of trust fraudulent and ordering defendant to cancel the deed of trust where defendant was not the beneficiary of the deed and the beneficiary was not a party to the action. We remand for further consideration of this issue.
Here, the trial court made the following finding of fact.
39. The [c]ourt finds the Deed of Trust in the amount of $72,000.00 executed by ... Defendant to his brother, Abdell Kahil on 1504 Homestead, Rocky Mount, North Carolina was fraudulent and done in an effort to encumber the marital property and prevent ... Plaintiff wife in getting anything of value from the marital estate.
Based on this finding the trial court made the following conclusion: "Defendant shall obtain cancellation of the fraudulent Deed of Trust to Abdell Khalil within 30 days of the entry of this judgment under penalty of civil and criminal proceeds." Abdell Khalil, defendant's brother and beneficiary of the deed of trust on the Homestead Road property, was not a party to the current action.
The court clearly expressed its belief that defendant's mortgage-an obligation encumbering the property-was fraudulent. We note that the obligation was to defendant's brother, an "insider"[1] ; the obligation was for a substantial portion of Homestead Road's property value; the obligation was incurred following the date of separation in anticipation of an equitable distribution proceeding; but the record does not disclose when plaintiff was made aware of the mortgage on the Homestead Road property. We remand this matter for the trial court to consider the nature of the transfer in accordance with the considerations and criteria set forth under the Uniform Fraudulent Transfer Act, codified at N.C. Gen. Stat. §§ 39-23.1 (2013)et seq. , and in effect at the time defendant mortgaged Homestead Place to his brother. See Crowell v. Crowell , --- N.C. App. ---, ----, ----S.E.2d ----, ---- (January 2, 2018) (No. COA17-164) (holding that the transfer of a deed of trust to real property to the plaintiff's son for no compensation following the separation of the parties was a fraudulent transfer intended to defraud the defendant creditor in the equitable distribution of property and thus was properly avoided). We remand this matter for further consideration, findings of fact, and conclusions of law.
V
Defendant argues that the trial court erred by ordering a distributive award without finding that the presumption that an in-kind distribution would be equitable had been rebutted or that defendant had the ability to pay a distributive award. We disagree.
Pursuant to General Statutes, section 50-20,
[s]ubject to the presumption of subsection (c) of this section that an equal division is equitable, it shall be presumed in every action that an in-kind distribution of marital or divisible property is equitable. This presumption may be rebutted by the greater weight of the evidence, or by evidence that the property is a closely held business entity or is otherwise not susceptible of division in-kind. In any action in which the presumption is rebutted, the court in lieu of in-kind distribution shall provide for a distributive award in order to achieve equity between the parties. The court may provide for a distributive award to facilitate, effectuate or supplement a distribution of marital or divisible property. The court may provide that any distributive award payable over a period of time be secured by a lien on specific property.
N.C.G.S. § 50-20(e).
Here, the trial court made the following findings of fact:
35. The [c]ourt finds the value of the marital estate of the parties at the date of separation is $446,722.00 and that ... Plaintiff's value of the marital property being distributed is $99,370.00 and ... Defendant's value of the marital property being distributed is $347,582.00.
36. The [c]ourt finds an equal division is equitable and each party should receive $223,461.00.
37. The [c]ourt finds ... Plaintiff is entitled to payment from ... Defendant $124,121.00 and in order to comply with IRS rules the money may be paid in 6 years and the [c]ourt finds the money is to be paid in 72 payments of $1,724.00 beginning the 1st day of the month following the entry of this order.
We also note that the trial court found that plaintiff and defendant were married when plaintiff was fourteen years old and defendant was twenty-seven. Plaintiff presented evidence that over the course of their thirty-five year marriage, "Defendant controlled all the finances and that [plaintiff's] role was as a homemaker tending to the needs of the home and the children." During the course of the marriage, the parties acquired six real properties. The court concluded and ordered that "Plaintiff is entitled to payment from ... Defendant $124,121.00 and in order to comply with IRS rules the money may be paid in 6 years and the [c]ourt orders the money is to be paid in 72 payments of $1,724.00" per month.
Defendant provides no authority that the provision stated in section 50-20(e) compels in-kind distributions as a mandatory rule rather than a permissive one, and we find none. Moreover, the trial court's order awarding plaintiff monthly payments for a period of seventy-two months is not manifestly without reason and, thus, is not an abuse of discretion.[2] See Pellom , 194 N.C. App. at 61-62, 669 S.E.2d at 325 ("It is well established that where matters are left to the discretion of the trial court, appellate review is limited to a determination of whether there was a clear abuse of discretion. A trial court may be reversed for abuse of discretion only upon a showing that its actions are manifestly unsupported by reason. A ruling committed to a trial court's discretion is to be accorded great deference and will be upset only upon a showing that it was so arbitrary that it could not have been the result of a reasoned decision."). Accordingly, we overrule defendant's argument.
Conclusion
Where the evidence supports the trial court's findings, which classified plaintiff and defendant's marital property, including real and personal property, we affirm that portion of the trial court's order. However, where the trial court failed to classify and distribute certain debt of which there is evidence in the record, we reverse the trial court's order and remand for findings of fact, conclusions of law, and distribution. Where the evidence does not support the trial court's findings of fact and conclusions valuing the business Party World of North Carolina, Inc., we reverse and remand the trial court's order for further consideration. We remand the trial court's order for further findings of fact and a conclusion regarding its basis for finding the mortgage of Homestead Road to defendant's brother fraudulent. And where the trial court did not act manifestly without reason in distributing property in-kind to defendant and ordering defendant to make periodic payments to plaintiff, we affirm the trial court's order.
AFFIRMED IN PART; REVERSED AND REMANDED IN PART.
Report per Rule 30(e).
Judges DILLON and DIETZ concur.

Within our General Statutes, Chapter 39 ("Conveyances"), Article 3a ("Uniform Voidable Transactions Act"), the definition of an "insider" includes "[a] relative of the debtor." N.C. Gen. Stat. § 39-23.1(7) a.1. (2017).

However, upon remand, it may be that the trial court's determination of the property value of the property distributed will change and as a consequence, how the marital property is distributed.