IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-1126

Filed 5 November 2024

Brunswick County, No. 15 CVD 1981

KATHLEEN K. FACE, Plaintiff,

v.

S. ALLEN FACE, Defendant.

Appeal by defendant from orders and judgments entered 28 December 2021 and 11 January 2022 by Judge J. Calvin Chandler in District Court, Brunswick County. Heard in the Court of Appeals 28 August 2024.

*Ward & Smith, P.A., by John M. Martin, J. Albert Clyburn, and Christopher S. Edwards, for plaintiff-appellee.*

*Jonathan McGirt for defendant-appellant.*

ARROWOOD, Judge.

S. Allen Face ("defendant") appeals from the trial court's alimony and equitable distribution orders. Defendant has additionally filed a petition for writ of certiorari ("PWC") seeking review of additional issues arising from alleged error in the trial court's indicative ruling on a Rule 60(b) motion. For the following reasons, we affirm in part, reverse in part, and remand the cause to the trial court for correction of clerical error.

I.      Background

The parties were originally married on 11 May 2007, then separated on 17 July 2014 and divorced on 9 November 2015. During the marriage, defendant acquired a 4.5% ownership interest in Ductilcrete Holdings, LLC ("Ductilcrete"). Also during the marriage on 15 September 2011, the parties as settlors formed a revocable trust known as "The S. Allen Face, III and Kathleen K. Face Revocable Trust Dated September 15, 2011," ("the Trust"). The parties were the sole beneficiaries and trustees of the Trust. Three properties acquired early in the marriage, namely 316 Sea Star Circle, 1009 Lismore Way, and 311 Cottage Lane, were placed in the Trust. After the parties' separation, the Sea Star Circle and Cottage Lane properties were sold out of the Trust. The Sea Star Circle sale netted proceeds of $183,935.00 disbursed equally between the parties, and the Cottage Lane sale netted proceeds of $91,050.00 disbursed to plaintiff after crediting defendant for his payment of $16,498.00 in mortgage debt.

On 19 July 2016, Judge Jason C. Disbrow entered a consent order which was signed by both parties. The order provided for an interim distribution under N.C.G.S. § 50-20, distributing to plaintiff one-half of defendant's RBC Centura Individual Retirement Account, one-half of defendant's shares in Ductilcrete, and the proceeds from the sale of 311 Cottage Lane, and distributing to defendant two cars and a thirty-six-foot boat.

On 22 September 2016, plaintiff filed a motion seeking a further interim distribution order, stating that the 1009 Lismore Way property was encumbered by

a note[1] for which defendant was liable, and plaintiff sought to refinance the note. On 14 November 2016, the trial court entered an order concluding that plaintiff was the dependent spouse, and defendant was the supporting spouse, and ordering defendant to pay a sum of $5,687.50 per month as post-separation support.

On 31 October 2017, after the parties' divorce, Ductilcrete was sold, and between 2 November 2017 and 6 November 2020, defendant received seven checks totaling $1,263,704.06 for the 4.5% ownership interest in his name.

On 4 June 2018, Judge William F. Fairley entered an order on interim distribution which addressed and clarified Judge Disbrow's prior order. Judge Fairley made the following findings in relevant part:

> 3. That the parties entered into a stipulation of interim distribution on July 19, 2016 which was signed by the Honorable Jason Disbrow and entered into this file, which distributed to the plaintiff herein one-half of the defendant's membership in the Ductilcrete LLC using the following language "Plaintiff shall have as her sole and separate property one half (1/2) of defendant's shares (sic) in Ductilecrete (sic)" and pursuant to which the parties contemplated that the plaintiff would be conveyed one half of the defendant's interest in Ductilcrete and that as a result thereof the plaintiff would own said interest as her sole and separate property one half of the defendant would retain as his sole and separate property one half of Ductilcrete plus other certain other marital assets set forth in said order;
>
> 4. That the stipulation of July 19, 2016 does not value the interest of either party in said asset but does intend that the parties, from that date forward, own their interest

---

[1] The encumbrance was related to defendant's boat.

therein as separate property;

5.     That subsequent to the entry of the stipulation hereinabove referenced, the plaintiff discovered that defendant's interest in this LLC was not transferable as a result of the organizational documents of the LLC;

. . . .

7.     That [plaintiff's counsel]'s letter of May 12, 2017 references the attached letter from [counsel for Ductilcrete] and indicates that his client, the plaintiff, would accept $100,800 "to resolve her interest in" the LLC and inquires of [defendant's counsel] as to whether the defendant would be agreeable to liquidating the plaintiff's interest in said LLC;

8.     That because the defendant's interest in the LLC was nontransferable, the sale of the plaintiff's portion of the defendant's interest in the LLC had to be approved by the defendant and that no sale to other members of the LLC of the plaintiff's interest in the LLC could take place without the approval and cooperation of the defendant;

. . . .

15.     That on October 31, 2017 the entirety of Ductilcrete LLC and was sold to GCP Applied Technologies, Inc. and that the value of the parties' interest therein was in the amount of $1,012,500 and that the same was forwarded to the defendant in the form of a check on November 2, 2017 and that the defendant deposited said amount into his bank account and has paid from those funds the amounts set forth in defendant's response to interrogatory number three introduced as plaintiffs Exhibit 2 in today's hearing;

16.     That the defendant contends that his efforts on behalf of the LLC subsequent to the date of separation of the parties and the date of interim distribution contributed to an increase in the value of the parties' interest in the LLC;

17. That the defendant retains $326,783 of the $1,012,500 proceeds from the sale of Ductilcrete LLC;

18. That no offer to sell plaintiff's interest in this LLC was conveyed to the defendant by [plaintiff's counsel]'s letter of May 12, 2017 and, if any such offer was made, the defendant communicated no acceptance thereof to the plaintiff within a reasonable period of time and that the parties, either individually or through their agents, never arrived at an agreement to sell and purchase said interest;

19. That the proposed stipulation purporting to modify a prior interim distribution order of the court was not signed by the plaintiff or counsel and did not constitute a valid and binding stipulation of the parties;

20. That the plaintiff is the equitable owner of one half of the defendant's interest in Ductilcrete LLC and she was the owner thereof as of the date of the interim distribution order dated July 19, 2016;

21. That the values of the parties' interest in Ductilcrete LLC as of the date of separation and the date of distribution remain for determination at the trial of equitable distribution;

22. That the estate of the parties is more than sufficient to accommodate an interim distribution as set forth hereinafter without concern that the same may deliver to either party assets that cannot be appropriately accounted for in the final equitable distribution order;

23. That there is no good reason that the court should decline to distribute at this time a portion of the remaining $326,783 currently retained by the defendant from the sale of the parties' interest in Ductilcrete LLC and that the plaintiff is entitled to possession of at least $100,800 thereof and that the remainder thereof, $225,983, should be deposited by the defendant into the office of the Clerk of Superior Court for preservation pending the equitable distribution.

Based on these findings, Judge Fairley concluded that the parties' interest in Ductilcrete was a marital asset subject to Judge Disbrow's order, "and that as a result of said order the plaintiff became the owner of one-half of the 4.5% interest in Ductilcrete LLC" as her sole and separate property, with defendant retaining the other one-half interest as his sole and separate property. Judge Fairley further concluded that plaintiff had not offered to sell her interest in Ductilcrete to defendant, that the proposed stipulation was not signed and accordingly not a valid and binding stipulation, and that Judge Disbrow's interim distribution order remained effective.

On 17 December 2018, plaintiff filed a motion to show cause, alleging that defendant had failed to comply with an order to compel with respect to defendant's income tax returns and response to plaintiff's request for production. The trial court entered an order to show cause the same day, and on 12 March 2019 entered a further order finding that the subject responses from defendant were "again, incomplete and do not conform to the court's order to compel[.]" As sanctions, the trial court ordered defendant to disclose the names and contact information for all individuals involved in preparing the parties' 2017 tax return, produce copies of any documents used in the same, and pay reasonable attorney's fees incurred in the prosecution of the order to show cause. On 20 November 2019, the trial court entered an order on attorney's fees, ordering defendant to make payments of $12,910.00 and $6,650.00 to plaintiff for reasonable attorney's fees.

On 2 December 2019, defendant filed a motion to set aside and for a new trial, citing "[n]ewly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)". Plaintiff responded on 11 December 2019 with a motion for show cause order alleging that defendant had failed to comply with the terms of the 20 November order. That same day, the trial court entered a show cause order requiring defendant to appear at a 21 January 2020 hearing.

Plaintiff filed another motion for civil contempt on 1 July 2020 regarding equitable distribution. The motion stated that a court-appointed expert had "formed the opinion that from the date of separation until December 31, 2016," the business Allen Face and Company, LLC, one of the assets subject to equitable distribution, had "increased in value by $221,000.00." The motion referenced a scheduling order entered by Judge Fairley requiring defendant to "comply with the court-appointed expert's request for production of documents . . . on or before the close of business on February 28, 2020." Plaintiff contended that defendant had produced exhibits "numbers 1 and 2," but had made no other document production as requested by the expert. Furthermore, plaintiff stated that "upon information and belief that Defendant has failed to pay the retainer to engage the expert for said services." The trial court entered a show cause order on 18 September 2020 ordering defendant to appear at a 29 September hearing.

On 6 January 2021, the trial court entered a pre-trial order with several stipulations agreed to by the parties. The contested issues remaining included:

A.      The classification of the property as shown on Schedule A as either marital, divisible or separate;

B.      The value of the marital and divisible property shown on Schedule A that have not been agreed upon;

C.      Whether an equal or unequal division of property is equitable after considering the factors contained in 50-20;

D.      The distribution of all property owned by the parties as of the date of separation and as of the date of distribution that is listed on Schedule A.

After hearings on 7 June and 2 August 2021, Judge J. Calvin Chandler entered an equitable distribution order on 20 December 2021. The order included findings that the parties "stipulated that the date of separation fair market value of the 4.5% interest in Ductilcrete was $201,600.00[,]" and "[n]either party introduced any competent evidence as to the value of the interest in Ductilcrete on July 19, 2016 (interim distribution date) or as of the date of trial." Judge Chandler accepted Judge Fairley's order as conclusively resolving that "[d]efendant's 4.5% interest in Ductilcrete was marital property[,]" and "[t]hat pursuant to the July 2016 Consent Order, Plaintiff obtained a 2.5% interest in Ductilcrete as her sole and separate property effective as of July 19, 2016." Judge Chandler further found:

76.      Between November 2, 2017 and November 6, 2020, Defendant received seven checks made payable to him personally for the total amount of $1,263,704.06. These funds were proceeds that Ductilcrete received from the

GCP sale and from retained earnings of Ductilcrete. These amounts were distributed to Defendant based on his record ownership of 4.5% in Ductilcrete.

77.     Because Plaintiff's ownership interest in Ductilcrete was not transferred to her after the entry of the July 2016 Consent Order, Plaintiff never had control of her interest in Ductilcrete and the portion of the sales proceeds and retained earnings that should have been distributed to her due to her 2.25% ownership in Ductilcrete ($631,852.03) were, in fact, distributed to Defendant.

. . . .

80.     Defendant has converted Plaintiff's separate property in the amount of $305,069.03. The Court makes this finding by clear, strong, and convincing evidence as required by *Upchurch v. Upchurch*, 122 N.C. App. 172.

81.     Defendant would be unjustly enriched if he were allowed to retain Plaintiff's separate property. . . .

82.     Defendant paid long-term capital gains taxes on the post-date-of-separation distributions . . . . The court will consider this as a distributional factor.

83.     The Court finds that the remaining $631,852.03 . . . is divisible property subject to distribution by this Court.

Regarding distributional factors under N.C.G.S. § 50-20(c), the trial court found that plaintiff's income was "limited to her Social Security benefits and period distributions from her individual retirement account" with a balance of $300,000.00, and that after separation plaintiff "had to receive distributions from her IRA in order to meet the payment of her counsel fees, and other living expenses." The court found that defendant "earns substantial income[,]" estimated at approximately $500,000.00

for 2021, as well as an individual retirement account with an approximate value of $670,000.00 and personal bank accounts with balances totaling approximately $155,000.00. The parties did not have "significant debt obligations" apart from the mortgage on the marital residence. The duration of the marriage was approximately 86 months prior to separation; plaintiff was "70 years old and has suffered serious health issues in the past but is currently in reasonably good health. [Defendant] is 73 years old and is in good physical health." For non-marital expectation of pension/retirement, "Defendant has been able to contribute to his individual retirement account in the maximum amount allowed by law[,]" while "Plaintiff has been financially unable to make any contribution to her individual retirement account since the date of separation." Based on the above, the court found that an in-kind division was not equitable.

Based on these findings, the trial court concluded that "[a]s a result of the Ductilcrete distributions following the GCP sale, Plaintiff was entitled to receive the sum of $631,852.03 as her separate property." Pursuant to N.C.G.S. § 50-20(i):

> Plaintiff is entitled to recover from Defendant as her separate property the sum of $631,852.03 less the $100,800.00 distribution previously ordered by the Court and less the funds in the amount of $225,983.00 deposited with the Clerk . . . After those credits are applied, Plaintiff is entitled to a judgment against Defendant in the amount of $305,069.03 plus post-judgment interest. Additionally, Plaintiff is entitled to recover reasonable attorney's fees from Defendant for fees incurred by her in order to recover her separate property.

The trial court further ordered that defendant pay plaintiff a sum of $400,850.01 plus eight percent interest annually, representing plaintiff's portion of the Ductilcrete distributions. Plaintiff was awarded sole ownership of the Lismore Way property and the full proceeds from the Cottage Lane sale; the proceeds from the Sea Star Circle sale were split evenly between the parties. Defendant filed notice of appeal from Judge Chandler's equitable distribution order on 28 December 2021.

The trial court entered an alimony order on 11 January 2022. The findings reiterated much of the preceding history of the case and previous findings discussed above. The trial court found that plaintiff's net monthly income was $708.42, and had "a shortfall each month of income to expenses of $7,475.02." Based on the findings, the trial court ordered defendant to pay plaintiff $6,000.00 per month as alimony from 1 February 2022 until 31 July 2024.

Defendant filed notice of appeal from the alimony order on 8 February 2022.

On 21 November 2022, defendant filed a Rule 60(b) motion to set aside the orders on appeal. The motion stated that "[d]uring the process of preparing materials for use in the pending appeals," defendant's counsel became aware "for the first time, of the existence of [the] Trust. If anyone involved in this matter was previously aware of this Trust, the existence of this Trust or its legal effect do not appear to have been brought to the attention of the Court . . . ." Defendant contended that the trial court failed to join the Trust, preventing its exercise of subject matter jurisdiction over a

claim for equitable distribution concerning real property owned by the Trust, in addition to mathematical and other errors relating to the distribution of Ductilcrete.

Defendant also filed with this Court a motion to hold appellate proceedings in abeyance in order to permit the use of the procedure described in *Bell v. Martin*, 43 N.C. App. 134, 142 (1979), *rev'd on other grounds*, 299 N.C. 715 (1980), for the trial court to enter an "indicative ruling."

On 6 September 2023, the trial court entered an indicative ruling denying defendant's Rule 60(b) motion. Regarding subject matter jurisdiction, the trial court concluded:

> 3. The Trust was not a necessary party to the equitable distribution action, and the Court had subject matter jurisdiction to distribute the Trust's assets, . . . .
>
> 4. While "[p]roperty is not part of the marital estate unless it is owned by the parties on the date of separation," *Lawrence v. Lawrence*, 100 N.C. App. 1, 16 (1990), the Court concludes that the settlors of a revocable trust, like the Trust, retain ownership of the trust res. "[T]he power of revocation is tantamount to ownership of the trust property and of such a nature that it is subject to order of the [C]ourt." . . . .
>
> 5. In addition to the provisions of the Trust in which the parties maintained individual control over any real property placed in the Trust, North Carolina's trust code reinforces the Court's view that property in a revocable trust remains property of the settlor. Pursuant to N.C.G.S. § 36C-6-602(c), settlors of a revocable trust, like Plaintiff and Defendant, have the power to revoke the trust at any time. . . .
>
> 6. The Court rejects Defendant's attempts to blur the

distinction between revocable trusts, on the one hand, and irrevocable trusts, on the other. In the case of an *irrevocable* trust, the trust is a necessary party. . . . [*R*]*evocable* trusts are "will substitutes" and the "rules applicable to wills should, and in fact often do, apply to such trusts." . . . By entering into the stipulations concerning the distribution of real property which had been placed in the Trust, the parties were exercising their rights to transfer real property as allowed by the terms of the Trust, and, in essence, with the distribution of Lismore Way, revoked the Trust as allowed by N.C. Gen. Stat. § 36C-6-602(2)(c).

The trial court further concluded that Rule 60(b) did not authorize the court to correct any alleged mathematical error, and that "correction of any mathematical error would be tantamount to a substitute for appeal, which our Supreme Court has concluded is improper."

On 8 January 2024, defendant filed a petition for writ of certiorari requesting review of additional issues relating to the appeals arising from the indicative ruling.

## II.    Discussion

Defendant contends the trial court erred in its classification and distribution of the Ductilcrete interest, in exercising subject matter jurisdiction without joining a necessary third-party, and by relying upon a defective equitable distribution order. We first address defendant's PWC and the trial court's indicative ruling on defendant's Rule 60(b) motion.

### A.    Rule 60(b) Motion

Defendant's Rule 60 motion asserts that the trial court lacked subject matter jurisdiction to distribute real property vested in a trust that was not joined as a party to the litigation, and that the distribution order contained underlying mathematical errors. This Court has previously granted writ of certiorari to review an advisory opinion denying a Rule 60(b) motion in *Morgan v. Nash Cnty.*, 224 N.C. App. 60, 74–75 (2012). In the interest of judicial economy, we grant defendant's petition for writ to review the trial court's indicative ruling.

"The issue of jurisdiction over the subject matter of an action may be raised at any time during the proceedings, including on appeal." *McClure v. County of Jackson*, 185 N.C. App. 462, 469 (2007); *see also* N.C.R. App. P. 10(a)(1) (objection to subject matter jurisdiction automatically deemed preserved).

In questions of subject matter jurisdiction, the "standard of review is *de novo*." *In re K.A.D.*, 187 N.C. App. 502, 503 (2007). Additionally, denial of a Rule 60(b) motion is reviewed under an abuse of discretion standard. *Kingston v. Lyon Const., Inc.*, 207 N.C. App. 703, 709 (2010) (citing *Davis v. Davis,* 360 N.C. 518, 523 (2006)). Accordingly, the trial court's decision "is to be accorded great deference and will be upset only upon a showing that it was so arbitrary that it could not have been the result of a reasoned decision." *White v. White,* 312 N.C. 770, 777 (1985).

Pursuant to N.C.G.S. § 36C-6-602, a revocable trust "may be revoked by either spouse acting alone but may be amended only by joint action of both spouses[.]"

    (c)    The settlor may revoke or amend a revocable trust:

(1) By substantial compliance with a method provided in the terms of the trust; or

(2) If the terms of the trust do not provide a method or the method provided in the terms is not expressly made exclusive, by:

> a. A later will or codicil . . . or
>
> b. By oral statement to the trustee if the trust was created orally; or
>
> c. Any other written method delivered to the trustee manifesting clear and convincing evidence of the settlor's intent.

The indicative ruling primarily concerns the Trust and its effect on subject matter jurisdiction. Defendant cites *Wenninger v. Wenninger*, 901 S.E.2d 677, 678 (N.C. Ct. App. May 7, 2024) to support his contention that the Trust was a necessary party. In *Wenninger*, this Court vacated an order pursuant to Rule 19, "[b]ecause the parties stipulated that the Trust held title to the Trust Property, the Trust was 'a necessary party to the equitable distribution proceeding,' and the trial court correctly concluded that it would not have jurisdiction to distribute the Trust Property without the Trust being made a party . . . ." *Id.* at 681. The *Wenninger* Court was guided by *Nicks v. Nicks*, 241 N.C. App. 487 (2015), which "repeatedly indicated that the proper procedure on remand would be to join the trust as a necessary party and resolve the equitable distribution accordingly." *Id.* Notably, the trust at issue in *Nicks* was irrevocable. *Nicks*, 241 N.C. App. at 491.

Defendant also relies on *Upchurch v. Upchurch*, 122 N.C. App. 172 (1996), specifically the rule that "when a third party holds legal title to property which is claimed to be marital property, that third party is a necessary party to the equitable distribution proceeding, with their participation limited to the issue of the ownership of that property." *Id.* at 176. "Otherwise the trial court would not have jurisdiction to enter an order affecting the title to that property." *Id.* (citing *Lucas v. Felder,* 261 N.C. 169, 171 (1964)). In *Upchurch*, this Court determined that a trust was not established by clear and convincing evidence. *Id.*

The issues of subject matter jurisdiction and joinder in an equitable distribution case were also addressed in *Quesinberry v. Quesinberry*, 210 N.C. App. 578 (2011). There, the appellant asserted that several items of property distributed pursuant to equitable distribution belonged to Quesinberry's Garage, which had not been joined. *Id.* at 581. However, the parties had stipulated in a pre-trial order that those property items were marital assets. *Id.* Accordingly, the *Quesinberry* Court held that the appellant's argument was without merit and overruled the issue on appeal. *Id.* at 582–83.

Additionally, our Business Court denied a motion to dismiss for failure to join a necessary party, reasoning that the trust was unnecessary because the trust was "by [its] nature subject to the control and whim of" the controlling shareholder, who could revoke the trust "at any time[,]" making its contents "subject to the claims of

the settlor's creditors." *Window World of Baton Rouge, LLC v. Window World, Inc.*, 2017 WL 2979142, at *10 (N.C. Super. July 12, 2017).

In this case, the Trust's beneficiaries, trustees, and settlors were plaintiff and defendant. In the pre-trial order signed by both parties, the parties stipulated that "all parties have been correctly designated and there is no question as to misjoinder or nonjoinder of parties[,]" and that the properties in the Trust were part of the marital estate. At oral argument, defendant's counsel contended that nobody was aware of the existence or legal significance of the Trust, and that a stipulation alone was insufficient to maintain subject matter jurisdiction.

We find this case to be distinguishable from *Wenninger* and *Upchurch* and are persuaded by the reasoning set forth in *Quesinberry*. Here, the Trust was revocable by either party, and all of the property and proceeds in the Trust were stipulated as marital assets. The parties agreed that the property was titled to them individually and retained complete control over the properties in the Trust. Defendant's assent to the pre-trial order manifested "clear and convincing evidence of the settlor's intent" for the property in the Trust to be distributed between the parties as marital property.

Accordingly, the pre-trial order effectively revoked the Trust; the parties as settlors, trustees, and beneficiaries retained control of the properties subject to distribution. This is unlike *Wenninger*, where the parties "stipulated that the Trust held title to the Trust Property," making the Trust " 'a necessary party to the

equitable distribution proceeding,' " *Wenninger*, 901 S.E.2d at 681. We also find this to be distinguishable from *Upchurch* because the "third party" here, the Trust, did not effectively hold legal title to the property subsequent to the pre-trial order, and was not a necessary party to the equitable distribution proceeding.

Because the Trust was revoked by the pre-trial order and the subject properties were stipulated as marital assets, we affirm the trial court's indicative ruling on defendant's Rule 60 motion.

## B.     Equitable Distribution

"Upon application of a party, the court shall determine what is the marital property and divisible property and shall provide for an equitable distribution of the marital property and divisible property between the parties in accordance with the provisions of this section." N.C.G.S. § 50-20(a). This Court reviews "a trial court's equitable distribution order to determine 'whether there was competent evidence to support the trial court's findings of fact and whether those findings of fact supported its conclusions of law.' " *Crago v. Crago*, 268 N.C. App. 154, 157 (2019) (quoting *Casella v. Alden*, 200 N.C. App. 859, 861 (2004)). "The division of property in an equitable distribution 'is a matter within the sound discretion of the trial court.' " *Id.* (quoting *Cunningham v. Cunningham*, 171 N.C. App. 550, 555 (2005)). "A trial court may be reversed for abuse of discretion only upon a showing that its actions are manifestly unsupported by reason." *White v. White*, 312 N.C. 770, 777 (1985).

"There shall be an equal division by using net value of marital property and

net value of divisible property unless the court determines that an equal division is

not equitable." N.C.G.S. § 50-20(c). If a trial court determines that equal distribution

is not equitable, the court shall consider the following factors:

> (1) The income, property, and liabilities of each party at the time the division of property is to become effective.
> (2) Any obligation for support arising out of a prior marriage.
> (3) The duration of the marriage and the age and physical and mental health of both parties.
> (4) The need of a parent with custody of a child or children of the marriage to occupy or own the marital residence and to use or own its household effects.
> (5) The expectation of pension, retirement, or other deferred compensation rights that are not marital property.
> (6) Any equitable claim to, interest in, or direct or indirect contribution made to the acquisition of such marital property by the party not having title, including joint efforts or expenditures and contributions and services, or lack thereof, as a spouse, parent, wage earner or homemaker.
> (7) Any direct or indirect contribution made by one spouse to help educate or develop the career potential of the other spouse.
> (8) Any direct contribution to an increase in value of separate property which occurs during the course of the marriage.
> (9) The liquid or nonliquid character of all marital property and divisible property.
> (10) The difficulty of evaluating any component asset or any interest in a business, corporation or profession, and the economic desirability of retaining such asset or interest, intact and free from any claim or interference by the other party.
> (11) The tax consequences to each party, including those federal and State tax consequences that would have been incurred if the marital and divisible property had been sold or liquidated on the date of valuation. The trial court may,

however, in its discretion, consider whether or when such tax consequences are reasonably likely to occur in determining the equitable value deemed appropriate for this factor.

(11a) Acts of either party to maintain, preserve, develop, or expand; or to waste, neglect, devalue or convert the marital property or divisible property, or both, during the period after separation of the parties and before the time of distribution.

(11b) In the event of the death of either party prior to the entry of any order for the distribution of property made pursuant to this subsection:

    a. Property passing to the surviving spouse by will or through intestacy due to the death of a spouse.

    b. Property held as tenants by the entirety or as joint tenants with rights of survivorship passing to the surviving spouse due to the death of a spouse.

    c. Property passing to the surviving spouse from life insurance, individual retirement accounts, pension or profit-sharing plans, any private or governmental retirement plan or annuity of which the decedent controlled the designation of beneficiary (excluding any benefits under the federal social security system), or any other retirement accounts or contracts, due to the death of a spouse.

    d. The surviving spouse's right to claim an "elective share" pursuant to G.S. 30-3.1 through G.S. 30-33, unless otherwise waived.

(12) Any other factor which the court finds to be just and proper.

N.C.G.S. § 50-20(c).

Defendant contends the trial court incorrectly valued, classified, and distributed marital property, specifically in allocating $201,600.00 as marital property for the interest in Ductilcrete, $631,852.03 as plaintiff's separate property pursuant to interim distribution including $100,800.00 as "separate property," and

another alleged $531,052.03 as separate property pursuant to "interim distribution." Defendant argues that the distribution adds up to more than the available total gross proceeds.

The first consent order on interim distribution from 19 July 2016, signed by both parties, ordered that plaintiff receive one-half of defendant's shares in Ductilcrete as sole and separate property. Judge Fairley's order filed 4 June 2018 clarified that order, finding that "plaintiff would own said interest as her sole and separate property and that the defendant would retain as his sole and separate property one half of Ductilcrete . . . ." Judge Fairley found that Ducilcrete was sold in 2017, netting $1,012,500.00 in proceeds, of which defendant retained $326,783.00. Judge Fairley concluded there was "no good reason" that the remainder should not be distributed, with plaintiff entitled to possession of $100,800.00 thereof and the remaining $225,983.00 to be deposited with the Clerk of Superior Court for preservation.

The trial court's order on equitable distribution acknowledged and "accepted" Judge Fairley's order in its findings, also noting that Judge Fairley "specifically left unresolved the issue of valuing the parties' interests in Ductilcrete leaving that issue to be resolved at the trial on equitable distribution." The trial court found that defendant "received seven checks made payable to him personally for the total amount of $1,263,704.06[,]" and that because plaintiff's interest in Ductilcrete was not transferred to her after the entry of the consent order, her ownership interest was

equal to half of the funds defendant received after the sale, totaling $631,852.03. However, the trial court also found that defendant had paid plaintiff $100,800.00 as interim distribution and deposited $225,983.00 with the Clerk of Court, reducing the converted property to the amount of $305,069.03. The trial court then found that the remaining $631,852.03 was divisible property subject to distribution.

The prior orders clearly found and concluded that the interest in Ductilcrete was to be distributed in equal one-half shares as separate property; instead, the trial court distributed one-half to plaintiff as her sole and separate property, and the other half as divisible property, rather than to defendant as his sole and separate property. Although the trial court referenced and "accepted" the prior orders as the law of the case, the court failed to acknowledge "that the defendant would retain as his sole and separate property one half of Ductilcrete[.]" The trial court's distributive award required defendant to pay plaintiff the sum of $400,850.01, representing the "[divisible] portion of the Ductilcrete distributions[,]" and leaving defendant with $231,002.02 as his divisible distribution. This "divisible" portion was in fact defendant's sole and separate property, and the trial court's distribution amounts to an abuse of discretion.

Furthermore, it appears the trial court incorrectly calculated the sum for distribution. The trial court based its findings on the total amount of $1,263,704.06 received by defendant via check, but failed to properly account for the prior distribution of the marital portion at the date of separation, $201,600.00. The

distributions reflect one-half portions totaling \$631,852.03 while also including two \$100,800.00 distributions from the marital portion of the interest. To ensure compliance with the previous orders and stipulations that each party would receive one-half of the interest as sole and separate property, the trial court should have subtracted the previously distributed portion from the proceeds before further dividing and distributing the funds. The correct distribution would be for plaintiff to receive \$531,052.03, less the deposit with the Clerk of \$225,983.00, for a remaining entitlement of \$305,069.03, and for defendant to receive \$531,052.03, rather than have that portion distributed unequally as divisible property.

Although the distribution of defendant's one-half interest as divisible property was an abuse of discretion, the distribution of plaintiff's separate property amounts to a clerical error. Clerical mistakes are "mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission . . . ." N.C.R. Civ. P. 60. A clerical error is defined as "[a]n error resulting from a minor mistake or inadvertence, esp[ecially] in writing or copying something on the record, and not from judicial reasoning or determination." *State v. Jarman,* 140 N.C. App. 198, 202 (2000) (citation and quotation marks omitted). "When, on appeal, a clerical error is discovered in the trial court's judgment or order, it is appropriate to remand the case to the trial court for correction because of the importance that the record speak the truth." *Zurosky v. Shaffer*, 236 N.C. App. 219, 235 (2014) (quoting *State v. Smith,* 188 N.C. App. 842, 845 (2008)).

Here, the record reflects that the trial court's calculation distributing $631,852.03 to plaintiff was the result of a clerical error, namely double-counting the $100,800.00 previously distributed marital portion of the Ductilcrete interest. Accordingly, we reverse the trial court's order with respect to the distributive award ordering defendant to pay the sum of $400,850.01 as divisible property, and remand to the trial court for correction of the distribution. The correct distribution is: to plaintiff, one-half interest of Ductilcrete as her sole and separate property in the amount of $631,852.03, reduced by $100,800.00 and $225,983.00 for credited interim distributions, for a remaining entitlement of $305,069.03; and to defendant, one-half interest of Ductilcrete as his sole and separate property in the amount of $631,852.03, reduced by $100,800.00 for interim distribution, for a remaining entitlement of $531,052.03.

## C.    Alimony

Finally, defendant contends the alimony order is invalid due to its reliance on the equitable distribution order.

The trial court's determination of whether a spouse is entitled to alimony is reviewed de novo. *Barrett v. Barrett*, 140 N.C. App. 369, 371 (2000) (citing *Rickert v. Rickert*, 282 N.C. 373, 379 (1972)). The trial court's determination of the amount, duration, and manner of payment of alimony is reviewed for abuse of discretion. *Id.* (citing *Quick v. Quick*, 305 N.C. 446, 453 (1982)). "[W]hen the trial court sits without a jury, the standard of review on appeal is whether . . . competent

evidence . . . support[s] the trial court's findings of fact and whether its conclusions of law were proper in light of such facts." *Collins v. Collins*, 243 N.C. App. 696, 699 (2015) (citation omitted). "Where no exception is taken to a finding of fact by the trial court, the finding is presumed to be supported by competent evidence and is binding on appeal." *Koufman v. Koufman*, 330 N.C. 93, 97 (1991) (citations omitted).

"The court shall award alimony to the dependent spouse upon a finding that one spouse is a dependent spouse, that the other spouse is a supporting spouse, and that an award of alimony is equitable after considering all relevant factors[.]" N.C.G.S. § 50-16.3A(a). "The court shall set forth the reasons for its award or denial of alimony and, if making an award, the reasons for its amount, duration, and manner of payment." N.C.G.S. § 50-16.3A(c).

Defendant's argument is founded solely in previously discussed challenges to the equitable distribution order. The alimony order does feature the same erroneous total of $631,852.00 without subtracting for previous distributions, but did not appear to specifically factor that number into the decretal portion ordering defendant to pay $6,000.00 per month. If anything, a higher total distribution in the alimony order would serve to reduce plaintiff's net shortfall; had the order correctly found plaintiff's net distribution on the interest to be $305,069.03, the award of monthly alimony may have been higher than $6,000.00. We further note that the alimony order was set to terminate on 31 July 2024 and is no longer in effect.

Defendant does not specifically challenge the remainder of the alimony order. We find the trial court complied with N.C.G.S. § 50-16.3A, and accordingly the trial court's alimony order is affirmed to the extent that it remains.

III.  Conclusion

For the foregoing reasons, we affirm the trial court's indicative ruling, reverse the equitable distribution order and remand for correction consistent with this opinion, and affirm the alimony order.

AFFIRMED IN PART, REVERSED IN PART & REMANDED FOR CORRECTION OF CLERICAL ERROR.

Judges COLLINS and WOOD concur.